DECISION IN MANDAMUS
{¶ 1} Relator, Honey Baked Ham of Ohio, Inc., has filed an original action in mandamus requesting this court to issue a writ of mandamus to order respondent, Industrial Commission of Ohio, to vacate its order that awarded temporary total disability compensation to respondent-claimant, Lynette Adams, beginning April 1, 2002, and to enter an order denying such compensation.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided the requested writ of mandamus should be denied because there was some evidence to support the commission's finding that claimant had not voluntarily abandoned her former position of employment. No objections have been filed to the magistrate's decision.
 {¶ 3} Upon a review of the magistrate's decision and an independent review of the record, this court finds there is no error of law or other defect on the face of the magistrate's decision and adopts it as its own. Therefore, the requested writ of mandamus is denied.
Writ of mandamus denied.
 Lazarus, P.J., and Bryant, J., concur. APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. : Honey Baked Ham of Ohio, Inc., : Relator, : v. : No. 03AP-503 Industrial Commission of Ohio (REGULAR CALENDAR) and Lynette Adams, : Respondents. :
 MAGISTRATE'S DECISION Rendered on December 12, 2003
IN MANDAMUS
 {¶ 4} In this original action, relator, Honey Baked Ham of Ohio, Inc., requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding temporary total disability ("TTD") compensation to respondent Lynette Adams beginning April 1, 2002 and to enter an order denying said com-pensation.
Findings of Fact:
 {¶ 5} 1. Lynette Adams ("claimant") began her employment as an hourly paid employee with relator on July 13, 1998. On September 3, 1998, claimant signed an acknowledgement indicating that she had read the company handbook and had access to it.
 {¶ 6} 2. On July 10, 2001, Karim Lopez, M.D., diagnosed claimant with bilateral carpal tunnel syndrome. In November 2001, claimant filed an application for workers' compensation benefits based upon the diagnosis. At that time, claimant was working as a "party tray coordinator" for relator at its store in Willoughby, Ohio.
 {¶ 7} 3. Following a March 5, 2002 hearing, a district hearing officer ("DHO") issued an order allowing the industrial claim for "bilateral carpal tunnel syndrome." Apparently, the DHO's order was not administratively appealed. Thus, the order became a final commission order allowing the claim.
 {¶ 8} 4. In the meantime, on March 26, 2001, claimant left a mandatory store meeting to have a cigarette. The next day, the store manager issued a written "disciplinary notice," which claimant signed. The notice explained that claimant had violated "company policies and procedures" as set forth in the "employee manual." The notice warned that "[a]ny future violations of this policy will result in suspension and up to including termination."
 {¶ 9} 5. On October 24, 2001, claimant received a written disciplinary notice for "[i]nsubordination or willful disobedience" occurring on October 20, 2001. The notice explained that claimant had used abusive language with a co-worker and continued the abusive language after she was told to stop. The notice indicated that claimant's misconduct was a violation of company policy set forth in the employee manual. The notice warned that "[a]ny future violations of this policy will result in further disciplinary action up to and including termination."
 {¶ 10} 6. Relator received a complaint letter from a customer regarding the customer's visit to the Willoughby store on January 3, 2002. The complaining customer did not identify claimant by name, but relator felt that claimant was the subject of the complaint. Consequently, relator did not issue a disciplinary notice to claimant.
 {¶ 11} 7. On March 20, 2002, claimant received another written disciplinary notice. The notice explained that relator had received a customer complaint letter stating that claimant had been "unprofessional" in that she "gave false information, acted inappropriately, and provided poor customer service." The customer's letter stated that the misconduct occurred on February 27, 2002. The notice indicated that the misconduct involved "[b]reaking company policy or procedures," and violated the employee manual. The notice warned that "[a]ny future violations will result in suspension or possibly termination."
 {¶ 12} 8. On March 27, 2002, relator's corporate office received an anonymous telephone complaint from a customer alleging that, during a customer transaction, claimant "kept jumping into conversation taking place between Michelle, Nick and other customers." The customer also complained that claimant was "very loud, bossy towards Michelle." Relator's official handwritten record of the telephone complaint states that Patty was asked "to get Lynette[']s story," and that "Patty called back to say Michelle [and] Lynette denied the cust[omers] description of event." Patty Patterson was the Willoughby store manager.
 {¶ 13} 9. On April 2, 2002, relator issued its final disciplinary notice to claimant. This notice states that claimant's employment is terminated, effective immediately. The notice explains:
* * * On 3/27/02 a customer complaint was received at the corporate office regarding unprofessional behavior by Lynette. Lynette spoke rudely and in an unprofessional manner to a customer.
* * * Prior discussion or warning on this subject: * * * Written Reprimand issued on 3/20/02[.]
* * * Statement of company policy on this subject: * * * Employee Manual: section 5, page 5-16; #8: Failure to adhere to established company policies and procedures.
(Emphasis sic.)
 {¶ 14} 10. In the meantime, on April 1, 2002, claimant initially visited Jonathan Waldbaum, M.D. For his April 1, 2002 office note, Dr. Waldbaum wrote:
* * * Ms. Adams presents today for evaluation and treatment of injuries sustained secondary to a work-related injury, claim # 01-863179, bilateral carpal tunnel syndrome. The patient reports that she began to experience gradual development of symptoms over time with her work doing repetitive motion at Honey Baked Ham Company. The patient was diagnosed via EMG study in July of 2001. Treatment has consisted of oral medications and bracing of the right wrist which has been intermittent. The patient denies any previous history of problems with her wrist prior to this work-related injury.
Impression:
* * * Right carpal tunnel syndrome.
* * * Left carpal tunnel syndrome.
Plan:
* * * We will dispense bilateral wrist braces and I have instructed the patient to use these braces at all times.
* * * At this time, the patient is continuing to have worsening of her symptoms with her repetitive motions at work. She cannot perform repetitive motions at this time and will be disabled from work at this time secondary to this.
* * * The patient will discontinue the Vioxx and initiate a course of treatment with Bextra 10 po qd. I have written a prescription for #30 today.
* * * We will request permission for a course of physical therapy three times a week for six weeks.
* * * * We will request permission for a bilateral carpal tunnel injections with cortisone medications.
* * * I will follow up with the patient in two weeks' time. I have asked her to contact me should she experience any worsening of her symptoms, have any side effects from the medication or have any further questions in the interim. * * *
 {¶ 15} 11. Claimant was examined again by Dr. Waldbaum during an April 15, 2002 office visit. On April 30, 2002, Dr. Waldbaum injected claimant's right wrist with cortisone medication. Following a May 15, 2002 office visit, Dr. Waldbaum wrote that the cortisone injection had not provided significant relief to claimant.
 {¶ 16} 12. Dr. Waldbaum referred claimant to Edward H. Gabelman, M.D., for an evaluation of her wrist conditions. Following a June 7, 2002 office visit, Dr. Gabelman recommended surgery.
 {¶ 17} 13. In August 2002, claimant underwent right carpal tunnel release surgery.
 {¶ 18} 14. In the meantime, on a C-84 dated April 5, 2002, Dr. Waldbaum certified a period of TTD beginning April 1, 2002 to an estimated return-to-work date of June 1, 2002, based upon bilateral carpal tunnel syndrome. For his objective clinical findings, Dr. Waldbaum wrote: "tenderness over injured area."
 {¶ 19} 15. On C-84s dated May 29, 2002 and November 6, 2002, Dr. Waldbaum certified TTD to an estimated return-to-work date of January 24, 2003. For his objective clinical findings, Dr. Waldbaum wrote: "tenderness over injured area."
 {¶ 20} 16. On a C-84 dated August 29, 2002, Dr. Gabelman certified TTD from April 1, 2002 to an estimated return-to-work date of November 1, 2002 based on carpal tunnel syndrome. For his objective clinical findings, Dr. Gabelman wrote: "tenderness over injured area."
 {¶ 21} 17. In the meantime, following a May 23, 2002 hearing, a DHO issued an order stating:
* * * Temporary total disability compensation from 04/01/2002 — 06/01/2002 is denied, based on the following. Claimant was terminated from her employment, on 04/02/2002, for just cause. Therefore, the claimant is ineligible for temporary total disability compensation benefits. Further, notwithstanding the above, the claimant missed no time from work, since her date of diagnosis, until disciplinary complaints were being culminated. Additionally, the C84 dated 04/05/2002, from Dr. Waldbaum, provides no objective finding, indicates only "tenderness over injury area" and Dr. Waldbaum provides no explanation as to why the claimant could successfully work for almost a year and now could no longer do so.
 {¶ 22} 18. Claimant administratively appealed the DHO's order of May 23, 2002. Following an August 21, 2002 hearing, a staff hearing officer ("SHO") issued an order affirming the DHO's order. The SHO's order states:
The C-84 from Dr. Waldbaum (dated 04/05/2002) is denied. Temporary total disability compensation for the period 04/01/2002 to an estimated return to work date of 06/01/2002 is denied. The claimant worked after her date of diagnosis and continued to do so until her termination from employment (effective 04/02/2002). The Staff Hearing Officer finds that the C-84 of Dr. Waldbaum (04/05/2002) does not set forth adequate factors to support the contention that claimant, after having worked for 9 months after date of diagnosis, was now disabled. Coincidentally, claimant was terminated, effective 04/02/2002, for violation of company work rules and policies. Claimant had knowledge of these rules and policies, having been disciplined on several occasions in 2000.
Claimant was terminated effective 04/02/2002 for violation of work rules (based upon customer complaints). This constitutes an "abandonment" of employment [and] bars subsequent payment of temporary total disability com-pensation. Claimant contends that the termination was punitive and retaliatory and was designed to punish claimant for her intended disability period. The employer acted within the parameters of the rules and policies governing employee behavior at Honey Baked Ham Company. Claimant has not submitted evidence to refute the customer complaints lodged against her. * * *
 {¶ 23} 19. Claimant administratively appealed the SHO's order of August 21, 2002 to the three member commission. Following a December 3, 2002 hearing, the commission issued an order vacating the SHO's order of August 21, 2002. The commission's December 3, 2002 order states:
* * * [T]emporary total disability compensation is awarded from 04/01/2002 to the date of this order, and to continue upon submission of supporting medical proof of temporary total disability. This decision is based on the C-84 reports by Dr. Waldbaum dated 04/05/2002, 05/29/2002, and 11/06/2002; the C-84 report by Dr. Gableman [sic] dated 08/29/2002; and the office notes of Dr. Waldbaum from 04/01/2002 to 07/24/2002.
The Industrial Commission finds the injured worker did not voluntarily abandon her position of employment. InLouisiana-Pacific Corp. v. Indus. Comm. (1995),72 Ohio St.3d 401, the Supreme Court held that a termination is deemed voluntary if the injured worker violates a written work rule that (1) clearly defines the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee.
The employer testified the injured worker was terminated for violation of item #8, Section V, page 5-16 of the employee handbook. Under that section, entitled Involuntary Termin-ation, certain infractions are listed that could result in disciplinary action up to and including discharge. Item #8 is the "(f)ailure to adhere to established Company policies and procedures." The policy further states that the Company retains the sole right to determine, in its own judgement, what conduct may justify discipline. A representative from the company testified that the injured worker was terminated after the receipt of an anonymous complaint, on 03/27/2002. The representative further testified that this was the second complaint received over a short time period. The earlier complaint was the subject of a letter dated 03/13/2002, which established a pattern of behavior that resulted in termination.
The Industrial Commission finds that injured worker's termination does not meet the first or second prongs ofLouisiana-Pacific. The work rule referenced by the employer to support termination does not clearly define the prohibited conduct. Moreover, the conduct was not previously identified by the employer as a dischargeable offense. In addition, the rule does not list customer complaints as a specific basis for termination, does not state how many complaints would cause termination, and does not define what qualifies as a pattern of behavior that would result in termination.
The Industrial Commission, therefore, finds that the injured worker's termination is not voluntary abandonment as defined inLouisiana-Pacific and that she is not precluded from receiving temporary total disability compensation.
 {¶ 24} 20. The parties stipulate that the employee manual contains the following provision as referenced in the commission's December 3, 2002 order:
THE FOLLOWING ARE INCIDENTS WHICH COULD RESULT IN DISCIPLINARY ACTION UP TO AND INCLUDING DISCHARGE.
* * * Habitual absenteeism and/or tardiness[.]
* * * Leaving the store during working hours without per-mission.
* * * Wasting time or loitering during working hours.
* * * Improper language and immoral, indecent, harassing or disorderly conduct.
* * * Making false, vicious or malicious statements concerning any employee.
* * * Creating or contributing to unsanitary conditions or poor housekeeping.
* * * Willful, deliberate or continued violation of, or disregard for common safety practices.
* * * Failure to adhere to established Company policies and procedures.
* * * Smoking in non-designated areas.
* * * Habitual unauthorized use of the telephone for personal reasons.
* * * Failure to follow established accounting and cash register procedures.
The above list is not intended to include every conceivable reason that may justify disciplining an employee. The Company retains the sole right to determine, in its own judgment, what conduct may justify discipline, and furthermore, retains the right to change this handbook at any time.
(Emphasis sic.)
 {¶ 25} 21. On May 27, 2003, relator, Honey Baked Ham of Ohio, Inc., filed this mandamus action.
Conclusions of Law:
 {¶ 26} Two issues are presented: (1) whether the commission correctly applied State ex rel. Louisiana-Pacific Corp. v.Indus. Comm. (1995), 72 Ohio St.3d 401, and its progeny in finding that claimant did not voluntarily abandon her former position of employment; and (2) whether the commission was required to deny TTD compensation because claimant was fired near the time of her claimed disability.
 {¶ 27} The magistrate finds: (1) the commission correctly applied Louisiana-Pacific and its progeny in finding that claimant did not voluntarily abandon her former position of employment; and (2) the commission was not required to deny TTD compensation because claimant was fired near the time of her claimed disability. Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 28} Relator's April 2, 2002 final disciplinary notice sets forth the factual basis for claimant's termination. The notice explains that on March 27, 2002, a customer complaint was received at the corporate office regarding claimant's "unprofessional behavior." According to the notice, claimant "spoke rudely and in an unprofessional manner to a customer." The notice further explains that this misconduct violates offense number eight as set forth in the employee manual. Offense number eight is described as "[f]ailure to adhere to established Company policies and procedures."
 {¶ 29} To state the obvious, offense number eight says nothing about speaking rudely or in an unprofessional manner to a customer. The first prong of Louisiana-Pacific requires that the conduct be clearly defined. The conduct for which claimant was terminated is not clearly defined, nor defined at all, by the description of offense number eight. Hence, the commission correctly determined that relator failed to meet the first prong of Louisiana-Pacific.
 {¶ 30} It is obvious from a reading of the 11 listed offenses that can result in discharge that number eight is a catchall. The other ten offenses are described specifically. Offense number eight is a general reference to company policies and procedures which, on its face, lacks specificity and clarity. The specific policies and procedures, the violation of which might lead to discharge, are not listed.
 {¶ 31} If relator had listed rudeness or unprofessional conduct as an offense that could result in termination, this court would be faced with the question of whether a discharge for those offenses can become a basis for a finding that the offender voluntarily abandoned his or her former position of employment. However, that question is not before this court in this action.
 {¶ 32} Turning to the second issue, claimant was terminated on April 2, 2002. Subsequently, claimant claimed a period of temporary total disability beginning April 1, 2002. Thus, claimant was fired near the time of a claimed disability. As the Ohio Supreme Court recognized in Ohio Treatment Alliance v.Paasewe, 99 Ohio St.3d 18, 2003-Ohio-2449, this type of scenario requires careful scrutiny.
 {¶ 33} In Ohio Treatment Alliance, the court issued a writ of mandamus ordering the commission to vacate its TTD award which was based upon reports from Dr. Sampson. Following his being fired on July 16, 2000, claimant, Eric Paasewe, obtained a C-84 from Dr. Sampson that certified TTD from May 11, 2000 through October 11, 2000, despite the doctor's prior release of the claimant to work and the claimant's actual return to work. The court found that Dr. Sampson's C-84s in effect repudiate his earlier release to work without explanation and, in fact, ignore claimant's actual return.
 {¶ 34} Clearly, the court's decision in Ohio TreatmentAlliance does not compel the issuance of a writ of mandamus here. The reports of Drs. Waldbaum and Gabelman, as well as the office notes, provide some evidence supporting the commission's TTD award.
 {¶ 35} Here, the office notes of Dr. Waldbaum disclose that claimant underwent a cortisone injection to her right wrist on April 30, 2002, less than one month after her termination. On April 1, 2002, the day before claimant was fired, Dr. Waldbaum wrote that he would request authorization for injections with cortisone medications. Thus, serious treatment for the allowed conditions was contemplated the day before the discharge.
 {¶ 36} Contrary to relator's suggestion here, the decision inOhio Treatment Alliance does not alter the fundamental rule in mandamus that it is the commission that weighs the evidence and that this court will not reweigh the evidence for the commission absent an abuse of discretion.
 {¶ 37} Clearly, the commission's TTD award is supported by some evidence upon which it relied.
 {¶ 38} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
 /s/ Kenneth W. Macke
KENNETH W. MACKE MAGISTRATE