DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} In this original action relator, Danelle E. Reese, requests a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying her temporary total disability ("TTD") compensation beginning February 4, 2004, and to enter an order granting said compensation.
 {¶ 2} This matter was referred to a magistrate of this court, pursuant to Civ.R. 53(C) and Section M, Loc.R. 12 of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of facts and conclusions of law, and recommended that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.)
 {¶ 3} Relator submits the following objections to the magistrate's decision:
I. IT IS NOT APPARENTLY CLEAR FROM THE FOUR CORNERS OF THE DECISION THAT THERE IS SOME EVIDENCE FOR THE DENIAL OF THE CLAIMANT'S REQUEST FOR TEMPORARY TOTAL DISABILITY COMPENSATION.
II. THE CERTIFICATION OF TEMPORARY TOTAL DISABILITY BY DR. ALTIC IS VALID.
 {¶ 4} There are no objections to the factual findings of the magistrate, all of which are supported by the record and adopted by this court.
 {¶ 5} The objections to the conclusions of law are interrelated and combined for discussion. Relator objects to the magistrate's conclusion that the commission's denial of TTD was supported by some evidence. Relator asserts that the commission must specifically state what evidence has been relied upon and explain the reason for its decision. In considering this objection it is important to note, as did the magistrate, that relator was injured on January 27, 2004, and that she did work three days following her accident until she was fired from her job on January 30, 2004 for theft of property from her employer. According to the facts, Mr. Hemed testified that the injured worker "relator" verified that her supervisor, Mr. Hemed, had found her work which she was able to perform until terminated for reasons having nothing to do with her fall. Also, a co-worker, Jean Ramey, stated that relator had said she was not hurt at the time of the fall and that she called OSHA to cause problems because she disliked the night manager, that she was going to receive a big check for falling and was going to be able to sit at home and not have to work to get paid. That testimony gives specific and ample grounds for questioning the opinion of Steven Altic, D.O., relying primarily on her complaints, that she was TTD from the time of her fall on January 27, 2004. Relator visited Dr. Altic five days later and the factual findings as compared to the complaints of relator show that neurovasculature in the upper extremities was grossly normal, that shoulder range of motion was normal with some tenderness, cervical examination was found to be grossly normal and there was only tenderness to the paralumbar region. Dr. Altic did not have any emergency room reports or x-rays at that time.
 {¶ 6} There are specific reasons, as found by the magistrate, that both claimant's credibility and Dr. Altic's credibility as to the disability certification places the commission in the position of being able to find her subjective claims combined with the modest factual findings of Dr. Altic to be insufficiently credible to support a finding of TTD. There is also a specific basis for the commission to reject relator's claim for TTD on the basis that she was offered light work consistent with the minimal injuries received in the fall which she apparently, as far as the record is concerned, was able to do until fired for theft.
 {¶ 7} For the reasons set forth in the magistrate's decision, the objections are overruled.
 {¶ 8} Following an independent review of this matter, we find that the magistrate has properly determined the pertinent facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's recommendation, we deny the requested writ of mandamus.
Objections overruled; writ of mandamus denied.
Klatt and Sadler, JJ., concur.
McCormac, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Danelle E. Reese, : Relator, : v. : No. 04AP-650 PWH Inc. and Industrial Commission : (REGULAR CALENDAR) of Ohio, : Respondents. :
 MAGISTRATE'S DECISION Rendered on March 15, 2005 Barkan + Neff Co., L.P.A., and Robert E. DeRose, for relator.
Littler Mendelson, and Paul R. Goodburn, Jr., for respondent PWH, Inc.
Jim Petro, Attorney General, and Kevin J. Reis, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 9} In this original action, relator, Danelle E. Reese, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her temporary total disability ("TTD") compensation beginning February 4, 2004, and to enter an order granting said compensation.
Findings of Fact:
 {¶ 10} 1. On January 27, 2004, relator sustained an industrial injury while employed with respondent PWH, Inc., dba Absolute Production. On that date, relator slipped and fell on ice in her employer's parking lot.
 {¶ 11} 2. On January 30, 2004, relator presented for treatment at the emergency room of Mount Carmel Health System. She was examined by Leigh A. Thomas, M.D., who wrote: "FINAL IMPRESSION: Contusion of left hip and pelvis and muscle spasm of trapezius, left side."
 {¶ 12} Dr. Thomas prescribed Tylenol No. 3 and Flexeril to use as needed for pain and recommended that relator follow up with her family physician in seven to ten days.
 {¶ 13} 3. On January 30, 2004, Bruce R. Hamed, Absolute's president, fired relator on grounds that she allegedly stole merchandise from Absolute valued in the thousands of dollars.
 {¶ 14} 4. On February 4, 2004, five days after she was fired, relator visited the office of Stephen Altic, D.O., where she was examined with respect to the injuries she received on January 27, 2004. Dr. Altic wrote:
* * * She states she was in the parking lot, going to her car on company premises when she slipped on the ice, hitting her low back and injuring her left shoulder/scapular region and landing on the left elbow. She went to Mt. Carmel West Emergency Room where the[y] x-rayed her. I do not have any ER reports or x-ray reports at this time. She was prescribed Tylenol 3 as well as Flexeril. Because of these injuries, she has been unable to work since the date of injury.
Ms. Reese currently complains of mostly pain in the left lumbar region. Initially, she had numbness down the left leg, but that has resolved. Her elbow is feeling much better now. She also continues to have significant pain in the left posterior shoulder and over the scapular region and trapezius musculature. She denies any prior history of any significant problems with her low back, left shoulder, scapular region, or elbow. She does admit to a previous remote history of a whiplash injury to her neck. That resolved. My objective examination shows mild ecchymotic area in the left elbow with full range of motion in the left elbow, and no olecranon tenderness or epicondyle tenderness. Neuro-vasculature in the upper extremities is grossly normal. Left shoulder range of motion is normal with tenderness in the trapezius musculature, left scapular area, and multiple trigger point sites. Cervical examination is grossly normal. Lumbar examination shows tenderness to the left SI and LS paralumbar region with painful flexion/extension lumbar spine with flexion at 40 degrees and extension 20 degrees.
In summary, it is my opinion that the following conditions are direct and proximate results of this industrial accident:
1. Left elbow contusion.
2. Left shoulder strain/sprain.
3. Left scapular strain/sprain.
4. Lumbosacral strain/sprain, 846.0.
I believe that these are myofascial injuries, at least with the current clinical evidence at hand at this time. I believe she would dramatically and rapidly improve with an interventional course of physical medicine, and I am going to begin that treatment.
I am, therefore, requesting the following via C9: retrospective approval for course of physical medicine to the left shoulder and scapular region as well as lumbosacral spine three times weekly for four weeks to include ultrasound, message, hot packs, ice packs, electrostimulation, and therapeutic exercises.
 {¶ 15} 5. On February 5, 2004, relator, through counsel, filed a First Report of an Injury, Occupational Disease or Death ("FROI — 1").
 {¶ 16} 6. On February 19, 2004, the Ohio Bureau of Workers' Compensation ("bureau") issued an order that apparently allowed the industrial claim.[1] The employer administratively appealed the bureau's order.
 {¶ 17} 7. On March 18, 2004, Dr. Altic completed a C-84 on which he certified a period of TTD beginning February 4, 2004 to an estimated return-to-work date of April 21, 2004. The C-84 indicates that relator was last examined on March 16, 2004.
 {¶ 18} 8. On March 24, 2004, a district hearing officer ("DHO") heard the employer's appeal from the bureau's February 19, 2004 order. Thereafter, the DHO issued an order allowing the industrial claim and awarding TTD compensation beginning February 4, 2004. The DHO's order explains:
The District Hearing Officer finds that the claimant sustained an injury in the course of and arising out of employment on 01/27/2004 when she slipped on ice and fell in a parking lot owned and maintained by the employer of record.
The District Hearing Officer orders that the claim be allowed for the following conditions: "CONTUSION OF LEFT ELBOW" and "SPRAIN OF LEFT SHOULDER" and "SPRAIN OF LEFT SCAPULA" and "SPRAIN LUMBOSACRAL."
The District Hearing Officer finds that the medical evidence from Mt. Carmel Hospital East (dated 01/30/2004) supports the finding that the claimant sustained an injury in the course of and arising out of her employment. Additionally, the District Hearing Officer relies upon medical evidence from Dr. Altic.
* * *
The District Hearing Officer orders that temporary total disability compensation be awarded from 02/04/2004 through today's date of hearing (03/24/2004) and that further such compensation continue upon submission of appropriate medical proof. The District Hearing Officer relies upon the 03/18/2004 C-84 report signed by Dr. Altic. The District Hearing Officer finds absolutely no evidence upon which the District Hearing Officer can rely in denying payment of temporary total disability compensation due to the alleged firing of the claimant. The District Hearing Officer notes the undated statement signed by Mr. Hamed but does not find that it alone is sufficient evidence to deny claimant's request for temporary total disability compensation. As such, the Bureau of Workers' Compensation order is modified to the extent that temporary total disability compensation is awarded from 02/04/2004 through today's date of hearing (03/24/2004) and further such compensation is to continue upon submission of appropriate medical proof. The remainder of the 02/19/2004 Bureau of Workers' Compensation order is affirmed in all respects not inconsistent with the instant order.
(Emphasis sic.)
 {¶ 19} 9. The "undated statement" of Mr. Hamed referenced in the DHO's order, states in its entirety:
Danelle Reese was fired from her job on January 30th, 2004. Witnesses had seen her steal merchandise valued in the thousands of dollars from the Absolute Screen Printing production facility, thus her firing. Grandview police were investigating this matter.
There was no claim made by Danelle Reese to the BWC until after she was fired for stealing.
I had asked Danelle if she was ok from the fall on the ice. She said she was fine and she did work days following her accident.
 {¶ 20} 10. The employer administratively appealed the DHO's order of March 24, 2004. Following a May 7, 2004 hearing, a staff hearing officer ("SHO") issued an order that affirms the DHO's allowance of the claim but denies TTD compensation. Regarding the denial of TTD compensation, the SHO explains:
Temporary Total Disability Compensation from 02/04/2004 to the date of today's hearing, however, is DENIED. The C-84 and medical opinion of Stephen Altic, D.O., is impeached by the fact that the injured worker was terminated from her job [for] and [sic] reasons set forth in Mr. Hamed's letter and the statement of Ms. Ramey.
Mr. Hamed testified, and the injured worker readily verified, that he had found her work which she was able to perform until he terminated her for reasons having nothing to do with her fall. Dr. Altic's certification that she had become disabled from all work five days after her termination is found not credible.
(Emphasis sic.)
 {¶ 21} 11. The stipulated record contains the statement of Jean A. Ramey, who was relator's co-worker at Absolute. Ramey witnessed the theft of merchandise from Absolute in January 2004. According to Ramey's signed and notarized statement:
I told Danell Reese that her brother (Darold Reese) and his friend (Justin Logsdon) were taking shirts out to her car and she laughed and said don't worry about it.
Darold Reese and his friend (Justin Logsdon) continued to take arms and arms full of Abercrombie Hollister shirts and Colts (Indianapolis Colts shirts). Then Danell Reese showed them where some really nice Abercrombie sweaters were and shorts (Abercrombie shorts) and hats and they carried them out to the car. The car was parked out front of the main door and then at lunch time (evening shift 8:00 pm) they moved the car to the side of the building.
A few days later Danell still had a lot of shirts still in the floor board of her car. I said something to her about it and she covered them up with a trash bag. Later that night it was really icy out and she was getting off work and she was running on the ice to her car and she fell on the ice. She got up and cussed her brother Darold out for not helping her up but he said he was smoking a joint out there at that time. I asked her if she was hurt and she said no. The next day at work she (Danell Reese) seemed ok until she talked to her boyfriend's mom * * * and then she said she was hurt and wanted to know if I'd say I saw her fall and I said I didn't want to at that time. * * *
Danell said the day after she fell she called OSHA to cause problems because she really disliked the night manager Jeff Seery.
* * *
* * * Danell Reese said that she was going to cause a lot of problems by calling OSHA and that she was going to receive a big check for falling and she was going to be able to sit at home and not have to work to get paid.
 {¶ 22} 12. On June 11, 2004, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of May 7, 2004.
 {¶ 23} 13. On June 28, 2004, relator, Danelle E. Reese, filed this mandamus action.
Conclusions of Law:
 {¶ 24} The true issue is whether the commission, through its SHO, relied upon some evidence that supports the determination that Dr. Altic's TTD certification lacks credibility.
 {¶ 25} Finding that the commission's denial of TTD compensation is supported by some evidence upon which the commission relied, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 26} Analysis begins with scrutiny of the SHO's explanation for denial of TTD compensation. Again, the SHO's order states:
Temporary Total Disability Compensation from 02/04/2004 to the date of today's hearing, however, is DENIED. The C-84 and medical opinion of Stephen Altic, D.O., is impeached by the fact that the injured worker was terminated from her job [for] and [sic] reasons set forth in Mr. Hamed's letter and the statement of Ms. Ramey.
Mr. Hamed testified, and the injured worker readily verified, that he had found her work which she was able to perform until he terminated her for reasons having nothing to do with her fall. Dr. Altic's certification that she had become disabled from all work five days after her termination is found not credible.
(Emphasis sic.)
 {¶ 27} Contrary to what seems to be suggested here by both relator and respondent, the commission did not deny TTD compensation based upon a finding that relator's firing constituted a voluntary abandonment of her employment under State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.
(1995), 72 Ohio St.3d 401, or based upon a finding that relator refused the employer's offer of a light-duty job. Both relator and respondent misread the commission's decision and consequently address issues that are not generated by the commission's order at issue.
 {¶ 28} While the SHO's order of May 7, 2004 is not a model of clarity, it is, nevertheless, clear that the reasons for denial of TTD compensation focused on the credibility of Dr. Altic's disability certification. The SHO found that Dr. Altic's certification was impeached by Mr. Hamed's letter and Ms. Ramey's statement. The SHO also pointed to the timing of Dr. Altic's certification following relator's firing.
 {¶ 29} It is the commission and its hearing officers that weigh the evidence. It was clearly within the commission's fact-finding discretion to find that Dr. Altic's TTD certification is impeached by Ms. Ramey's statement.
 {¶ 30} Ramey's statement is evidence not only that relator stole merchandise from her employer, for which she was fired, but, also, that she intended to defraud the workers' compensation system. According to Ramey, relator stated "that she was going to receive a big check for falling and she was going to be able to sit at home and not have to work to get paid."
 {¶ 31} The claimant's credibility during an office visit and medical examination can be critical to the physician's disability opinion because the examining physician necessarily relies, at least in part, on the claimant's subjective complaints. For example, in his narrative report of the February 4, 2004 office visit and examination, Dr. Altic wrote:
* * * Because of these injuries, she has been unable to work since the date of injury.
Ms. Reese currently complains of mostly pain in the left lumbar region. Initially, she had numbness down the left leg, but that has resolved. Her elbow is feeling much better now. She also continues to have significant pain in the left posterior shoulder and over the scapular region and trapezius musculature. * * *
 {¶ 32} Significantly, Dr. Altic's report indicates that he was unaware that relator had been fired five days prior to the office visit. His report suggests that he simply accepted relator's claim that she had been unable to work since the date of her injuries.
 {¶ 33} In short, the credibility of the claimant can matter when the commission is charged with determining the credibility of a doctor's report. Ms. Ramey's statement not only impeaches relator's credibility, it also impeaches the credibility of Dr. Altic's disability certification, as the SHO properly noted.
 {¶ 34} The SHO's finding that Ms. Ramey's statement impeaches Dr. Altic's TTD certification is sufficient justification for rejection of Dr. Altic's C-84s and the commission's denial of relator's request for TTD compensation. Ms. Ramey's statement is indeed some evidence supporting the commission's decision.
 {¶ 35} The SHO's order also points out that Dr. Altic certified that relator was temporarily totally disabled as of February 4, 2004, five days following the firing. As the court stated in State ex rel. OhioTreatment Alliance v. Paasewe, 99 Ohio St.3d 18, 2003-Ohio-2449, claims for TTD compensation that are close in time to a claimant's termination can invoke careful scrutiny.
 {¶ 36} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
[1] The bureau's February 19, 2004 order is not contained in the stipulated record.