DECISION
{¶ 1} Relator, Kilbarger Construction, Inc. ("relator"), commenced this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its orders denying the request for temporary total disability ("TTD") compensation of respondent, Gary L. White, Jr. *Page 2 
("respondent"), and denying relator's motion for reimbursement of compensation it paid in respondent's Pennsylvania workers' compensation claim arising out of the same work-related injury subject of the claim at issue herein.
 {¶ 2} Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision including findings of fact and conclusions of law. (Attached as Appendix A.) Therein, the magistrate concluded that the commission did not abuse its discretion and that this court should deny the requested writ. Relator filed objections to the magistrate's decision, the commission filed a memorandum in opposition to those objections, and relator filed a reply memorandum. This cause is now before the court for a full and independent review.
 {¶ 3} In its first objection, relator largely reconstitutes the same arguments it made to the magistrate with respect to whether the commission's denial of TTD is supported by "some evidence." Relator argues that because there was no medical evidence to contradict Dr. Cernak's C-84, the commission's order is an abuse of discretion. However, the commission denied TTD because it found that Dr. Cernak's C-84 was not credible. As the magistrate pointed out, the commission is the sole evaluator of the weight and credibility of evidence. State exrel Strimbu v. Indus. Comm., 106 Ohio St.3d 173, 2005-Ohio-4386, 833 N.E.2d 286, ¶ 10. Because the commission's determination as to the credibility of the C-84 was within its prerogative and was supported by evidence, we decline to find that it was an abuse of discretion.
 {¶ 4} In it second objection, relator argues that the magistrate erred in finding no abuse of discretion in the commission's refusal to reimburse relator for sums it paid under a Pennsylvania workers' compensation claim arising out of the same injury upon which *Page 3 
the instant claim is based. Again, relator simply resubmits to the court the same arguments it made to the magistrate. The magistrate correctly determined the facts and applied the law. Consequently, we overrule relator's second objection.
 {¶ 5} Having undertaken a review of relator's objections, considered the arguments of the parties, and independently appraised the record, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, and we deny the requested writ of mandamus.
Objections overruled; writ of mandamus denied.
TYACK and DESHLER, JJ., concur.
DESHLER, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 4 
 APPENDIX A MAGISTRATE'S DECISION Rendered on May 29, 2007 IN MANDAMUS {¶ 6} In this original action, relator, Kilbarger Construction, Inc., requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its orders denying a request for temporary total disability ("TTD") compensation beginning October 18, 2003, and denying relator's July 28, 2005 motion for *Page 5 
reimbursement for compensation it has directly paid in the Pennsylvania workers' compensation claim of respondent Gary L. White, Jr.
Findings of Fact: {¶ 7} 1. On October 23, 2001, respondent Gary L. White, Jr. ("claimant"), filed a claim for workers' compensation with the Ohio Bureau of Workers' Compensation ("bureau"). On October 9, 2001, while employed by relator as a driller at a site located in Pennsylvania, claimant sustained a fracture of his left distal radius. Claimant was apparently a Pennsylvania resident at the time of this industrial injury. By order mailed October 29, 2001 the bureau allowed the claim and awarded TTD compensation beginning October 10, 2001, and to continue based upon medical evidence. Apparently, the bureau's order was not administratively appealed. Relator is a state-fund employer in the Ohio claim and thus the TTD compensation has been paid by the bureau from the state fund.
 {¶ 8} 2. On or about August 6, 2003, claimant filed a claim under the Pennsylvania workers' compensation system for the same injury.
 {¶ 9} 3. On August 14, 2003, claimant returned to light-duty work with relator.
 {¶ 10} 4. On October 18, 2003, claimant was discharged from his employment with relator. A document captioned "Employee Termination Record" prepared by relator indicates that claimant was discharged on October 18, 2003, for allegedly threatening a fellow employee and other related misconduct.
 {¶ 11} 5. Following several hearings, on March 29, 2005, the Pennsylvania Bureau of Workers' Compensation ("Pennsylvania BWC") allowed the Pennsylvania claim pursuant to an "Agreement for Compensation" executed and filed by relator. The *Page 6 
parties, however, litigated the question of whether the discharge was for cause. In the March 29, 2005 order, the Pennsylvania BWC Judge determined that claimant was not terminated from his employment for cause. The Pennsylvania BWC Judge ordered the reinstatement of "total disability wage loss benefits" beginning October 18, 2003.
 {¶ 12} The Pennsylvania BWC Judge also determined that relator had violated the Pennsylvania Workers' Compensation Act by failing to have Pennsylvania workers' compensation coverage on the claimant at the time of his injury. Consequently, the Judge imposed penalties of 50 percent of compensation payable to the claimant through August 14, 2003, subject to a "credit" for workers' compensation benefits paid in the Ohio claim.
 {¶ 13} 6. Because of relator's failure to have Pennsylvania workers' compensation coverage for claimant's October 9, 2001 injury, the award of compensation by Pennsylvania required relator to pay claimant directly under the terms of the March 29, 2005 decision of the Pennsylvania BWC Judge.
 {¶ 14} 7. On July 28, 2005, relator filed a motion in the Ohio claim requesting an award of TTD compensation beginning October 18, 2003, a date corresponding to the reinstatement of compensation in the Pennsylvania claim. Relator's motion further requested: "to the extent the employer has or will pay some of this award out of pocket in the [Pennsylvania] workers' compensation claim, the employer requests reimbursement from the BWC."
 {¶ 15} 8. Following a September 28, 2005 hearing, a district hearing officer ("DHO") issued an order denying relator's July 28, 2005 motion. The DHO's order explains: *Page 7 
 * * * [T]he employer's request for reimbursement of temporary total compensation for the period 10/18/2003 through 09/19/2005, inclusive, is specifically denied as said request does not present a justiciable issue at this time, as the Injured Worker has not requested nor has been paid temporary total compensation for the above-stated period. Claimant has returned to work 09/20/2005. Accordingly, employer's motion is therefore denied in its entirety.
 {¶ 16} 9. Relator administratively appealed the DHO's order of September 28, 2005.
 {¶ 17} 10. Following a December 14, 2005 hearing, a staff hearing officer ("SHO") issued an order that vacates the DHO's order of September 28, 2005 but, nevertheless, denies relator's July 28, 2005 motion. The SHO's order of December 14, 2005 explains:
 It is the finding of the Staff Hearing Officer that the employer has not provided statutory authority that would support a finding that the Industrial Commission is obligated to reimburse the employer for amounts of temporary total disability compensation that were ordered paid by the Pennsylvania workers' compensation system.
 A C-84 signed by the injured worker on 11/07/2005 and submitted on the date of this hearing requests payment of temporary total disability compensation to the claimant for the closed period of time from 10/18/2003 through 09/19/2005, inclusive. This C-84 filed 12/14/2005 is referred to the Bureau of Workers' Compensation for processing.
 {¶ 18} 11. On February 1, 2006, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of December 14, 2005.
 {¶ 19} 12. Earlier, on November 7, 2005, claimant completed and signed form C-84 requesting TTD compensation beginning October 18, 2003. As previously noted, this C-84 was filed with the SHO at the December 14, 2005 hearing. *Page 8 
 {¶ 20} 13. Claimant's C-84 request for TTD compensation was supported by an attending physician's report completed by Mary Beth Cermak, M.D., on November 4, 2005. On the C-84, Dr. Cermak certified TTD beginning October 18, 2003 to an actual return-to-work date of September 20, 2005.
 {¶ 21} 14. Following a March 6, 2006 hearing, a DHO issued an order denying the C-84 request for TTD compensation. The DHO's order of March 6, 2006 explains:
 The employer has raised the following arguments at today's hearing: (1) medical evidence in the claim file supports payment of temporary total disability compensation for the closed period of 10/18/2003 through 09/19/2005, and (2) payment of said compensation should be awarded to the employer as reimbursement for the amount of temporary total disability compensation the employer paid in Pennsylvania.
 Firstly, the DHO finds that a hearing was held before a SHO on 12/14/2005 whereby the SHO denied the employer's request for reimbursement. The SHO held that "the employer has not provided statutory authority that would support a finding that the Industrial Commission is obligated to reimburse the employer for amounts of temporary total disability compensation that where [sic] ordered paid by the Pennsylvania Worker's Compensation system."
 Since the reimbursement issue was already ruled upon by the SHO, the DHO finds that there is no jurisdiction to rehear the matter. The DHO notes that the employer has filed a Reconsideration Motion with the Industrial Commission on the very same matter.
 With respect to the request for temporary total disability compensation from 10/18/2003 through 09/19/2005, the DHO finds as follows. Firstly, the DHO finds that the claimant was already paid lost wages by the Pennsylvania Worker's Compensation system for this period based upon the statements made by Mr. Schein. Secondly, the DHO does not find that the C-84 report, signed by Dr. Cermack on 11/04/2005 is persuasive evidence in support of the requested period of temporary total disability compensation. *Page 9 
 The onset of the latest period of temporary total disability alleged in this claim coincides with the claimant being fired on 10/17/2003. There is no persuasive evidence by way of office notes from the treating physician or the claimant's testimony describing why the claimant was suddenly unable to work at his former position of employment on 10/18/2003. The claimant had returned to work with the employer of record in June of 2003 and was, apparently, able to work without any problems until the date he was fired by the employer. The DHO also finds Dr. Cermack's 10/24/2005 C-84 report to be unpersuasive as Dr. Cermack has not explained his subjective and objective clinical findings to support the period of temporary total disability compensation requested.
 {¶ 22} 15. Relator administratively appealed the DHO's order of March 6, 2006.
 {¶ 23} 16. Following an April 21, 2006 hearing, an SHO issued an order that affirms the DHO's order of March 6, 2006. The SHO's order of April 21, 2006 explains:
 The injured worker is denied payment of temporary total disability from 10/18/2003 through 09/9/2005, closed period. The injured worker returned to work on 09/20/2005. This C-84 from Dr. Cermak starts temporary total disability on the day after the injured worker was fired on 10/17/2003. The injured worker had been fired for an action he took against a fellow worker. A return to work date of 09/20/2005 is when this same employer decided to rehire him. The Staff Hearing Officer finds that there is no reason to think that the injured worker would not have continued working if it had not been for the firing. Therefore, the lack of work for the period in question was due to the injured worker's own fault.
 The Staff Hearing Officer also finds that there is no jurisdiction to consider a reimbursement to the employer for compensation paid in this claim. The employer is requesting a reimbursement due to compensation paid under a Pennsylvania workers' compensation claim for the same injury and the same time period. That issue, reimbursement, was not noticed for today's hearing. It was also not noticed for the 03/06/2006 District Hearing Officer hearing from which this appeal was taken. Therefore, without notice of the issue, the Hearing Officer finds no jurisdiction to consider the issue. All evidence was reviewed and considered. *Page 10 
 {¶ 24} 17. On May 31, 2006, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of April 21, 2006.
 {¶ 25} 18. On July 1, 2006, the three-member commission mailed an order denying relator's request for reconsideration of the SHO's May 31, 2006 refusal order.
 {¶ 26} 19. On October 2, 2006, relator, Kilbarger Construction, Inc., filed this mandamus action.
Conclusions of Law: {¶ 27} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 28} Preliminarily, relator argues that it has standing to challenge the commission's denial of an award of TTD compensation to claimant because an award of TTD compensation in the Ohio claim can be used by relator as a "credit" to reduce its financial liability in the Pennsylvania claim. (Relator's reply brief, at 1.)
 {¶ 29} The magistrate will not address the commission's assertion here that relator lacks standing to bring this action. It is clear that, even if relator has standing, its challenge to the commission's orders lack merit.
 {¶ 30} The SHO's order of April 21, 2006 states a valid reason supported by some evidence for denial of the C-84 request for TTD compensation beginning October 18, 2003. As the SHO explained, Dr. Cermak's C-84 starts TTD on the day after claimant was fired. The SHO's order states:
 * * * [T]here is no reason to think that the injured worker would not have continued working if it had not been for the firing. Therefore, the lack of work for the period in question was due to the injured worker's own fault. *Page 11 
 {¶ 31} The SHO's finding is given added strength by the court's reasoning in State ex rel. Ohio Treatment Alliance v. Paasewe,99 Ohio St.3d 18, 2003-Ohio-2449, at ¶ 7-9, wherein the court states:
 Cognizant of the medical implications involved, we have carefully scrutinized — and will continue to carefully scrutinize — claims for TTC that are close in time to a claimant's termination, particularly where the claimant either had been released or had actually returned to the former position of employment. See State ex rel. McClain v. Indus. Comm. (2000), 89 Ohio St.3d 407[.] * * * A determination of temporary total disability inherently declares that a claimant is medically unable to return to his or her former job. Where a claimant works that job on Wednesday morning, is fired on Wednesday afternoon, and alleges on Thursday morning that he or she is now temporarily and totally disabled, a single question emerges: what happened in 23 hours to transform a nondisabling condition into a disabling one? It is a situation that is — and will remain — inherently suspicious. As we observed in upholding denial of TTC in McClain:
 "[Claimant reported for his regular shift on September 4, 1997, and did not complain of any work-prohibitive problems at that time. it was only after claimant tested positive for alcohol consumption that his condition suddenly became work-prohibitive." Id. at 409[.] * * *
 Medical evidence will, therefore, be pivotal in determining eligibility for TTC when a claimant is fired near the time of a claimed disability. If documentation can, for example, indeed establish coincidental injury-related circumstances or demonstrate that the claimant's return to work was not without continuing medical problems, then the claimant may be able to sustain his or her burden of proof. Many claimants, however, will have difficulty establishing that a sudden onset of "disability" that coincides with termination of employment is truly related to the industrial injury.
 {¶ 32} Clearly, Dr. Cermak's C-84 certification of TTD as of the date of claimant's discharge is suspect under the reasoning in the SHO's order of April 21, 2006, and as *Page 12 
highlighted by the reasoning set forth in Ohio Treatment Alliance. Significantly, other than the C-84 itself, there is no medical documentation to establish coincidental injury-related circumstances or to demonstrate that claimant's return to light-duty work was not without continuing medical problems. It was clearly within the commission's discretion to determine that Dr. Cermak's C-84 lacks credibility and, on that basis, deny the request for TTD compensation.
 {¶ 33} Here, relator argues that the commission cannot deny the C-84 request for TTD compensation unless there is sufficient evidence to satisfy the criteria set forth in State ex rel. Louisiana-Pacific Corp.v. Indus. Comm. (1995), 72 Ohio St.3d 401, 403. InLouisiana-Pacific, the court states:
 * * * [W]e find it difficult to characterize as "involuntary" a termination generated by the claimant's violation of a written work rule or policy that (1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee. Defining such an employment separation as voluntary comports with [State ex rel. Ashcraft v. Indus. Comm. (1987), 34 Ohio St.3d 42] and [State ex rel. Watts v. Schottenstein Stores Corp. (1993), 68 Ohio St.3d 118] — i.e., that an employee must be presumed to intend the consequences of his or her voluntary acts.
 {¶ 34} According to relator, the three criteria set forth inLouisiana-Pacific must be satisfied because the SHO's order of April 21, 2006 finds "the lack of work for the period in question was due to the injured worker's own fault."
 {¶ 35} Relator's reliance upon Louisiana-Pacific is misplaced. Clearly, the SHO's order of April 21, 2006 does not actually deny the requested award of TTD based upon a voluntary abandonment of employment, even though the order casts fault on claimant *Page 13 
for the lack of work. Finding the injured worker to be at fault is not essential to the SHO's reasoning as to why Dr. Cermak's C-84 lacks credibility.
 {¶ 36} Thus, the commission did not abuse its discretion in denying the C-84 request for TTD compensation beginning October 18, 2003.
 {¶ 37} Moreover, it is also clear that, absent an Ohio award of TTD compensation that might be used by relator as a "credit" against its financial obligations in the Pennsylvania claim, relator has no right or claim for reimbursement from the state fund for its financial obligations in the Pennsylvania claim.
 {¶ 38} Here, relator cites to and quotes a portion of Article II, Section 35, Ohio Constitution:
 * * * [A]ny employer who pays the premium or compensation provided by law, passed in accordance herewith, shall not be liable to respond in damages at common law or by statute for such death, injuries or occupational disease. * * *
 {¶ 39} Here, relator cites to and quotes a portion of R.C. 4123.74:
 Employers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment, or for any death resulting from such injury, occupational disease, or bodily condition occurring during the period covered by such premium so paid into the state insurance fund[.] * * *
 {¶ 40} Here, relator cites to and quotes a portion of R.C.4123.46(A)(1):
 * * * [T]he bureau of workers' compensation shall disburse the state insurance fund to employees of employers who have paid into the fund the premiums applicable to the classes to which they belong when the employees have been injured in the course of their employment, wherever the injuries have occurred[.] * * * *Page 14 
 {¶ 41} Here, relator cites to and quotes a portion of R.C. 4123.46(C):
 Payment to injured employees, or to their dependents in case death has ensued, is in lieu of any and all rights of action against the employer of the injured or killed employees.
 {¶ 42} Here, relator cites to and quotes a portion of R.C. 4123.54(A):
 Every employee, who is injured or who contracts an occupational disease, and the dependents of each employee who is killed, or dies as the result of an occupational disease contracted in the course of employment, wherever such injury has occurred or occupational disease has been contracted[.] * * *
 {¶ 43} According to relator, the above-noted provisions of the Ohio Constitution and the Ohio Revised Code direct the bureau to reimburse relator for the so-called "out of pocket" compensation paid to claimant in the Pennsylvania claim.
 {¶ 44} According to relator, the language "wherever the injuries have occurred" contained in R.C. 4123.46(A)(1) and 4123.54(A), include injuries that have occurred outside the borders of the state of Ohio. Relator concludes that because Ohio allowed the claim for an injury that occurred in Pennsylvania, it must save relator harmless against the Pennsylvania workers' compensation claim. Relator's argument lacks merit.
 {¶ 45} There is no dispute here that relator had workers' compensation coverage for claims filed with the Ohio workers' compensation system. This coverage included the claim here that arose from an industrial accident that occurred in Pennsylvania. Thus, the claim allowed by Ohio has, in effect, satisfied the language "wherever the injuries have occurred." It is clear that Ohio has met its constitutional and statutory obligations. Clearly, neither the Ohio Constitution nor the statutes cited by relator *Page 15 
require or authorize the bureau or the commission to save relator harmless against claims that might be recognized by another state jurisdiction.
 {¶ 46} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
 KENNETH W. MACKE, MAGISTRATE *Page 1