DECISION
{¶ 1} Relator, Richard A. Roddy, had filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission"), to vacate its order denying his application for temporary total disability ("TTD") compensation. The commission's order was based on a finding that relator had voluntarily abandoned his employment and thus was not entitled to such compensation.
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate has rendered a decision and recommendation that includes comprehensive findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate concluded that relator was properly terminated by his employer for violation of written work rules during the pendency of his work-related injury claim. The magistrate further concluded, however, that the commission had insufficiently addressed relator's contention that the employer's decision to terminate relator at this time was pretextual and represented an attempt by the employer to avoid payment of TTD compensation. The magistrate accordingly recommended that the court issue a limited writ of mandamus ordering the commission to vacate its prior order and re-determine the matter after addressing the question of whether the employer's termination of relator was pretextual.
 {¶ 3} Relator, respondent Defiance Metal Products, and the commission have all filed objections to the magistrate's decision, and the matter is now before us for an independent review.
 {¶ 4} Relator's objection asserts that the magistrate incorrectly concluded that the circumstances of relator's termination made his departure voluntary and thus barred him from receiving TTD compensation. This argument does not contest the accuracy of the magistrate's findings of fact, but only their interpretation, and for these purposes we are able to reiterate the following findings by the magistrate. Relator sustained a work-related injury on May 23, 2002, when another employee ran over relator's foot with a tow motor. Relator underwent surgery and received TTD compensation from May 24 through August 7, 2002, when he returned to restricted-duty work. Relator suffered continuing foot pain and eventually an additional claim was allowed for a "plantar nerve lesion." Appellant was scheduled and approved for surgery on May 13, 2003 to remove the neuroma. Two weeks before the surgery, April 29, 2003, relator was fired for an incident in which he started a tow motor without first checking to see whether it was in gear, causing it to lurch forward and strike a machine and a fellow employee. Although Defiance Metal Products' employee handbook did not contain a specific written work rule prohibiting starting a tow motor without verifying that it was in gear, the handbook does contain general safety rules. Relator had previously been warned on multiple occasions by his employer for safety-related violations, including one on May 23, 2002 where he received a written warning that future failure to abide by company policy would result in disciplinary action up to and including discharge. On March 28, 2003, relator was again warned for nearly hitting his supervisor with a tow motor. At that time, he was told again in writing that no further safety violations would be tolerated. The terminating offense followed within a month.
 {¶ 5} A claimant's voluntary abandonment of employment will preclude entitlement to TTD compensation. State ex rel.Louisiana-Pacific Corp. v. Indus. Comm. (1995),72 Ohio St.3d 401. Firing will constitute a voluntary abandonment of employment if it results from behavior willingly undertaken by the claimant, which makes the termination voluntary in nature. State ex rel.Watts v. Schottenstein Stores Corp. (1993), 68 Ohio St.3d 118,121. "[A]n employee must be presumed to intend the consequences of his or her voluntary acts." Louisiana-Pacific, at 403. The Supreme Court of Ohio has stated that a discharge is "voluntary" if it is generated by the claimant's violation of a written work rule or policy that (1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as the dischargeable offense, and (3) was known or should have been known to the employee. Id.
 {¶ 6} The facts of the present case fall within the rule inLouisiana-Pacific. The employer in the present case did not have a specific written work rule in the handbook precisely covering the negligent tow motor operation for which appellant was terminated. However, the rule book, which contains sufficient general safety-related rules, must be viewed in conjunction with the written warnings received by appellant for his similar unsafe tow motor operation and other unsafe conduct. Thus, the instant violation would constitute violation of a known work rule underLouisiana-Pacific. We accordingly find that the magistrate correctly concluded that the commission had not abused its discretion in finding, based upon the facts in the record, that appellant had voluntarily abandoned his employment and was precluded from receiving TTD. Relator's objections to the magistrate's decision are accordingly overruled.
 {¶ 7} Respondents Defiance Metal Products and the commission have objected to the magistrate's conclusions to the extent that the magistrate found that the commission failed to consider whether relator's discharge was pretextual. The magistrate accordingly recommended that a limited writ issue ordering the commission to vacate its order and readdress the issue of relator's entitlement of TTD after a determination of whether or not relator's termination was pretextual or justified.
 {¶ 8} This case is squarely on all fours with State ex rel.Todd v. Indus. Comm., Franklin App. No. 02AP-993, 2003-Ohio-2731. There, this court declined to issue a writ under identical circumstances because relator had not raised before the commission the argument that his firing was merely pretextual. "[R]elator did not argue the issue of pretext before the commission, and we are hard pressed to find an abuse of discretion in the commission's not considering an argument never presented to it." Id. at ¶ 14. Relator has argued in response only that he presented evidence before the commission establishing the chronology of his discharge and his pending TTD claim. While the timing is obviously suspicious, this evidence does not establish that pretext was argued before the commission, nor does anything else in the record so demonstrate. Respondent's objections to the magistrate's decision are accordingly sustained, and the magistrate's decision will not be adopted to the extent that it recommends an issuance of a limited writ in order to have the commission consider the issue of pretext.
 {¶ 9} Following our independent review of the matter pursuant to Civ.R. 53, we adopt the magistrate's decision in part, including the findings of fact and conclusions of law contained therein, as our own, excluding that aspect of the decision recommending that a writ issue in order to have the commission reconsider the question of pretextual firing. The requested writ of mandamus is denied.
Relator's objections are overruled; respondents' objectionsare sustained; writ of mandamus denied.
 French and McGrath, JJ., concur.
CHRISTLEY, J., retired of the Eleventh Appellate District assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. : Richard A. Roddy, : :
Relator, : :
v. : No. 04AP-930 :
Industrial Commission of Ohio : (REGULAR CALENDAR) and Defiance Metal Products, : :
Respondents. :
 MAGISTRATE'S DECISION Rendered on April 11, 2005 Gallon Takacs Co., L.P.A., and Theodore A. Bowman, for relator.
Jim Petro, Attorney General, and Dennis H. Behm, for respondent Industrial Commission of Ohio.
Eastman Smith LTD., Thomas J. Gibney and Richard L.Johnson, for respondent Defiance Metal Products.
 IN MANDAMUS {¶ 10} Relator, Richard A. Roddy, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his application for temporary total disability ("TTD") compensation on the basis that relator had voluntarily abandoned his employment and ordering the commission to find that he is entitled to said compensation.
 {¶ 11} Findings of Fact:
 {¶ 12} 1. Relator sustained a work-related injury on May 23, 2002, when a toe motor operated by another employee ran over his right foot. Relator's claim was originally allowed for: "fracture phalanx foot-closed right second and fifth toe."
 {¶ 13} 2. On May 31, 2002, relator underwent a closed reduction of his fifth metatarsal. Relator was paid TTD compensation from May 24 through August 7, 2002, when he returned to restricted duty work.
 {¶ 14} 3. Relator's work-related restrictions were lifted on December 23, 2002, and he returned to his regular work assignment.
 {¶ 15} 4. Because of continuing right foot pain, relator's treating physician referred him to Thomas Padanilam, M.D., for a consultation. Relator was first examined by Dr. Padanilam on January 27, 2003, at which time he diagnosed a neuroma between toes two and three in the web space and injected the area with Lidocaine.
 {¶ 16} 5. Subsequently, by order dated May 24, 2003, relator's claim was additionally allowed for: "plantar nerve lesion, right."
 {¶ 17} 6. Thereafter, Dr. Padanilam submitted a request for surgery to remove the neruoma. Corvel, the managed healthcare provided for respondent Defiance Metal Products ("employer"), approved the surgery March 21, 2003. The surgery was scheduled for May 13, 2003.
 {¶ 18} 7. On April 29, 2003, relator was fired. Throughout this mandamus action, the employer has provided the following rationale for terminating relator:
Mr. Roddy was terminated on April 29, 2003 following a long history of documented infractions, including violations of several safety rules. Mr. Roddy was written upon on August 19, 1998 for improperly moving loose safety barriers on a press. This was considered a safety violation. On January 22, 1999, Mr. Roddy was again written up for incorrectly repairing his die instead of informing his supervisor. On January 8, 2002, Mr. Roddy was given a verbal warning for a variety of infractions, including making personal calls on work time and leaving his work area before his shift ended. On January 23, 2002, Mr. Roddy was given another verbal warning for leaving work on two occasions without informing his supervisor. On April 22, 2002, Mr. Roddy received a warning because 227 parts were manufactured incorrectly due to his carelessness. On April 24, 2002, Mr. Roddy received another warning for dumping a load of scrap metal in the parking lot. On May 13, 2002, Mr. Roddy received still another warning for talking to other operators instead of working. On May 23, 2002, Mr. Roddy was disciplined for bending a cover guard on a machine. This was considered another violation of the company's safety rules. The May 23, 2002 incident report, which Mr. Roddy signed, states: "Failure to abide by Company Policy will result in further disciplinary action up to and including discharge." On March 28, 2003, Mr. Roddy committed another safety violation by nearly hitting his supervisor with his tow motor. Mr. Roddy was warned in writing that "[t]his cannot happen again." On April 29, 2003, Mr. Roddy was standing next to a diesetter's tow motor and started it without first checking to see whether the tow motor was in gear. The tow motor lurched forward striking a machine and a fellow employee. Defiance Metal Products then terminated Mr. Roddy's employment on the basis of his long history of infractions — particularly the two infractions involving his unsafe use of tow motors that occurred within a month's time.
 {¶ 19} 8. The Employment Handbook is included as part of the record. Safety is emphasized in the handbook and several general safety rules are provided. Furthermore, the handbook explains that the employment is at-will and that multiple infractions of the employer's rules may result in termination.
 {¶ 20} 9. Relator underwent the scheduled surgery on May 13, 2003.
 {¶ 21} 10. On June 2, 2003, Dr. Padanilam completed a C-84 certifying relator as being temporarily and totally disabled from April 29, 2003 through an estimated return-to-work date of August 28, 2003.
 {¶ 22} 11. The matter was heard before a district hearing officer ("DHO") on July 31, 2003. The DHO found that relator was entitled to TTD compensation beginning May 13, 2003, the date of the surgery and rejected the employer's claims as follows:
The injured worker was fired two (2) weeks prior to surgery on 05/13/2003.
The surgery had previously been approved by the Bureau of Workers' Compensation/Managed Care Organization and leave under FMLA approved by the employer. There is certain notice of total
disability prior to the alleged bad behavior and termination.
The employer has provided a "What We Expect From You" list of prohibited conduct. Curiously, the list is headed by a disclaimer that "our rules are basically common sense; requiring conduct acceptable to a team oriented employment environment." This falls far short of the regiments under Ohio law to support a clearly defined standard of conduct or the potential penalty for the actions. The litany of cases from [State ex rel. Baker v. Indus.Comm. (2000), 89 Ohio St.3d 376, State ex rel. Pretty Products,Inc. v. Indus. Comm. (1996), 77 Ohio St.3d 5, State ex rel.Cobb v. Indus. Comm. (2000), 88 Ohio St.3d 54 and State ex rel.McKnabb v. Indus. Comm. (2001), 92 Ohio St.3d 559] outline the strict requirements for a finding of abandonment due to the potential for abuse in terminating an injured worker to reduce financial liability.
The written work rule alleged herein is overly broad and is not sufficient to deny benefits.
(Emphasis sic.)
 {¶ 23} 12. The employer appealed and the matter was ultimately submitted to a staff hearing officer ("SHO") on November 26, 2003. The SHO vacated the prior DHO order and denied relator's application for TTD compensation. The SHO considered the fact that the employer had documented its problems with relator from August 1998 through the final incident on April 29, 2003, and concluded as follows:
Defiance Metal Products issues a handbook to all employees. The injured worker candidly admitted that he did, in fact, receive a copy of said handbook. In a section entitled "What We Expect From You", Defiance Metal Products explicitly states that multiple warnings or suspensions, under several rules, can result in further discipline or discharge, based upon the employee's overall record. The company also includes a non-exhaustive list of infractions that can result in disciplinary action up to andincluding immediate discharge.
As further noted above, when Mr. Roddy received the two written warnings, on 5/23/2002 and 3/28/2003, they both specifically contained the warning that, "Failure to abide by Company Policy will result in further disciplinary action up to and including discharge."
Therefore, it is the finding of this Staff Hearing Officer that Mr. Roddy's termination, on 4/29/2003, was generated by his violation of a written work rule or a policy that: (1) clearly defined prohibited conduct, (2) had been previously identified by employer as dischargeable offense, and (3) was known or should have been known to the injured worker.
Therefore, the payment of Temporary Total Disability Compensation, from 4/30/2003 forward, is barred by the Ohio Supreme Court's holding in the case of [State ex rel.Louisiana-Pacific Corp. v. Indus. Comm. (1995),72 Ohio St.3d 401].
Therefore, it is the order of this Staff Hearing Officer that Temporary Total Disability Compensation is hereby DENIED, from 4/30/2003 through 11/26/2003.
(Emphasis sic.)
 {¶ 24} 13. Further appeal by relator was refused by order of the commission mailed December 23, 2003.
 {¶ 25} 14. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 26} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State exrel. Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 27} TTD compensation awarded pursuant R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment.State ex rel. Ramirez v. Indus. Comm. (1982),69 Ohio St.2d 630. Where an employee's own actions, for reasons unrelated to the injury, preclude him or her from returning to their former position of employment, he or she is not entitled to TTD benefits, since it is the employee's own actions, rather than the injury, that precludes return to the former position of employment. State ex rel. Jones Laughlin Steel Corp. v. Indus.Comm. (1985), 29 Ohio App.3d 145. When determining whether an injury qualifies for TTD compensation, the court utilizes a two-part test. The first part of the test focuses on the disabling aspects of the injury. The second part of the test determines if there are any factors, other than the injury, which would prevent claimant from returning to his or her former position of employment. State ex rel. Ashcraft v. Indus. Comm.
(1987), 34 Ohio St.3d 42. However, only a voluntary abandonment precludes the payment of TTD compensation. State ex rel.Rockwell Internatl. v. Indus. Comm. (1988), 40 Ohio St.3d 44. As such, voluntary abandonment of the former position of employment can, in some instances, bar eligibility for TTD compensation.
 {¶ 28} A firing can constitute a voluntary abandonment of the former position of employment when the firing is a consequence of behavior which the claimant willingly undertook. State ex rel.Watts v. Schottenstein Stores Corp. (1993), 68 Ohio St.3d 118. The rationale for this is a person is deemed to tacitly accept the consequences of their voluntary acts.
 {¶ 29} In the present case, the commission relied upon Stateex rel. Louisiana-Pacific Corp. v. Indus. Comm. (1995),72 Ohio St.3d 401, and concluded that relator voluntarily abandoned his employment with the employer and is not entitled to TTD compensation. Relator contends, in part, that his termination from employment by the employer was pretextural and was simply an excuse not to have to pay compensation. The employer argues that relator did not make this argument before the commission and cannot make it now. However, relator succeeded at the DHO level and it was the employer who filed an appeal before the SHO. In that appeal, the employer argued that relator's termination precluded the payment of TTD compensation. The record does not contain any documents relative to that appeal before the SHO which were filed on behalf of relator. As such, given that the issue raised by the employer's appeal was that TTD compensation should be denied based upon the firing and voluntary abandonment, and inasmuch as there is no evidence to the contrary and the commission does not contest the point, the magistrate concludes that, in all likelihood, this issue was raised before the commission. As such, it can be addressed by this court.
 {¶ 30} In Louisiana-Pacific, the court characterized a firing as "voluntary" where that firing is generated by the employee's violation of a written work rule or policy that: (1) clearly defined the prohibited conduct; (2) had been previously identified by the employer as dischargeable offense; and (3) was known or should have been known to the employee.
 {¶ 31} In the present case, the employer has submitted its handbook which states that warnings or suspensions under several rules can result in further discipline or discharge based upon an employee's overall record. The employer has documented numerous violations of work rules, including safety violations, by relator. In fact, it seems apparent that the employer could have terminated relator at any time. For whatever reason, the employer did not terminate relator until after the employer authorized relator's surgery. In State ex rel. Smith v. Superior's BrandMeats, Inc. (1996), 76 Ohio St.3d 408, the court recognized the great potential for abuse in allowing a simple allegation of misconduct to preclude the payment of TTD compensation. While the instant record shows multiple instances of alleged misconduct on relator's behalf, this magistrate finds that this case presents a situation where more is required by the commission's order in finding that this relator's termination from his employment precludes the payment of TTD compensation. Because the employer chose to tolerate relator's misconduct for years, the magistrate finds that the commission failed to properly explain its decision to deny TTD compensation and violated Noll and Superior'sBrand Meats, when the commission failed to address the issue of whether or not the termination of relator was pretextural. Again, the magistrate is cognizant that relator has allegedly violated numerous written work rules over the course of his employment with the employer. However, because of the timing involved in this case, the magistrate finds that this issue needs to be expressly addressed in the commission's order and the commission's failure to do so constitutes an abuse of discretion.
 {¶ 32} Relator also argues that the employer has not identified a specific rule which he violated which he knew or should have known could result in his termination. As such, relator contends that his termination cannot preclude the payment of TTD compensation.
 {¶ 33} Upon review of the record, the magistrate notes that there are no specific rules that provide for not bumping into your co-workers with a tow motor. However, this is clearly unsafe work behavior for which an employer can terminate an employee. As such, this magistrate finds that, in spite of the fact that this particular action is not specifically prohibited, relator could be terminated for this and, provided the commission determines that the employer's decision to terminate relator at this time is not pretextural, relator's entitlement to TTD compensation would be precluded.
 {¶ 34} Based on the foregoing, it is this magistrate's decision that this court issue a limited writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order and to redetermine the issue of relator's entitlement to TTD compensation after addressing the issue of whether or not the employer's termination of relator was pretextural or whether it was truly justified.