DECISION ON OBJECTIONS TO MAGISTRATE'S DECISION
{¶ 1} Relator, Extendicare Health Services, Inc., filed this original action in mandamus. Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals, the matter was referred to a magistrate of this court. On June 25, 2004, the magistrate rendered a decision, including findings of fact and conclusions of law, and therein recommended that this court deny the writ. (Attached as Appendix A.) Relator timely filed objections to the magistrate's decision, which are now before the court.
 {¶ 2} In its first objection, relator argues that the circumstances in this case are akin to those present in State exrel. Ohio Treatment Alliance v. Paasewe, 99 Ohio St.3d 18,2003-Ohio-2449, 788 N.E.2d 1035, in which the Supreme Court of Ohio "careful[ly] scrutinize[d]" the claim. Relator argues that, as the Supreme Court did in Ohio Treatment Alliance, this court is permitted to, and should, observe the inconsistency in the treating physician's office notes, and conclude that there was not "some evidence" before respondent, Industrial Commission of Ohio ("the commission") to support its award of temporary total disability compensation to respondent, Mahogney Harrison ("the claimant").
 {¶ 3} We do not perceive the facts and circumstances in the present case as sufficiently congruent with those in OhioTreatment Alliance. First, unlike the claimant in OhioTreatment Alliance, the claimant in this case was not fired. Second, the claimant in the present case did not first exhibit signs of resumption of her disability only after she received workplace discipline. In fact, on her second day back to work, and fully three days before relator issued her a discharge warning, the claimant left work early, complaining of pain. This case does not present the same type of inherently suspicious circumstances present in Ohio Treatment Alliance, which caused the Supreme Court of Ohio in that case to ask, "what happened in 12 hours to transform a nondisabling condition into a disabling one?" Accordingly, relator's first objection is overruled.
 {¶ 4} In its second objection, relator argues that the magistrate erred in failing to address relator's argument that the commission abused its discretion in refusing further appeal and refusing relator's request for reconsideration, without offering any explanation of the reasons underlying those decisions. Relator argues that the cases of State ex rel.Mitchell v. Robbins Myers, Inc. (1983), 6 Ohio St.3d 481, 483,453 N.E.2d 721, and State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203, 206, 567 N.E.2d 245 require that the commission provide explanations of its reasoning in such decisions.
 {¶ 5} In Noll, in which the Supreme Court of Ohio relied on its prior holding in Mitchell, the court held, "[i]n anyorder of the Industrial Commission granting or denyingbenefits to a claimant, the commission must specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision." Id. at syllabus. (Emphasis added.) We do not interpret the clear language employed by the court inNoll to require an explanation of the commission's reasoning when the commission refuses to hear a further appeal from a decision of a Staff Hearing Officer granting benefits to a claimant. A refusal of further appeal is not an "order" and does not grant or deny benefits to a claimant.
 {¶ 6} With respect to relator's motion for reconsideration, relator characterizes the language the commission employed in denying the same as "boiler-plate" and insufficient. We disagree. The commission stated:
The Request for Reconsideration * * * is denied for the reason that the request fails to meet the criteria of Industrial Commission Resolution No. R98-1-03 dated May 6, 1998.
For the same reasons discussed with respect to the commission's refusal to hear further appeal, the commission's denial of reconsideration is not subject to the requirements of Noll.
Moreover, we deem the explanation the commission did offer to be sufficient to put relator on notice as to the reason for denial of the request. Accordingly, relator's second objection is overruled.
 {¶ 7} After an examination of the magistrate's decision, an independent review pursuant to Civ.R. 53, and due consideration of relator's objections, we overrule the objections and find that the magistrate correctly and appropriately determined the issues raised. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, and deny relator's request for a writ of mandamus.
Objections overruled; writ denied.
Lazarus, P.J., and Brown, J., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Extendicare Health: Services, Inc., : Relator, : v. : No. 03AP-1201 Industrial Commission of Ohio : (REGULAR CALENDAR) and Mahogney Harrison, : Respondents. :
 MAGISTRATE'S DECISION Rendered on June 25, 2004 Porter, Wright, Morris Arthur, L.L.P., Darrell R. Shepard
and Jennifer L. Jung, for relator.
Jim Petro, Attorney General, and Kevin J. Reis, for respondent Industrial Commission of Ohio.
Law Offices of Thomas Tootle, Thomas Tootle and Edward J.Cox, for respondent Mahogney Harrison.
 IN MANDAMUS {¶ 8} In this original action, relator, Extendicare Health Services, Inc. ("Extendicare"), requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding temporary total disability ("TTD") compensation beginning February 26, 2003, to respondent Mahogney Harrison, and to enter an order denying said compensation.
Findings of Fact:
 {¶ 9} 1. On November 13, 2002, Mahogney Harrison ("claimant") sustained an industrial injury while employed as a "nurse assistant" by Extendicare, a self-insured employer under Ohio's workers' compensation laws. The industrial claim is allowed for "lumbar strain; thoracic strain," and is assigned claim number 02-878282. The injury occurred when claimant was pushing a patient in a wheelchair.
 {¶ 10} 2. On February 20, 2003, claimant was initially examined by Rajiu Yakhmi, M.D., and came under his care. On February 20, 2003, Dr. Yakhmi released claimant to return to work the next day without restrictions. Prior to this, claimant had worked light duty for Extendicare because of her injury.
 {¶ 11} 3. Claimant returned to work on February 21, 2003. She also worked on February 22, 2003, but left work early that day claiming she was having pain.
 {¶ 12} 4. On February 24, 2003, claimant called her employer and stated that she would not be at work because she had injured herself when she fell on the way to the bus.
 {¶ 13} 5. On February 25, 2003, claimant returned to work. On that day, Extendicare issued claimant a discharge warning.
 {¶ 14} 6. On February 26, 2003, claimant returned to see Dr. Yakhmi. On February 27, 2003, Dr. Yakhmi completed a C-84 certifying temporary total disability from February 26, 2003 to an estimated return-to-work date of March 26, 2003. On the C-84, Dr. Yakhmi wrote: "Positive muscle spasms. Range of motion decreased due to pain. Palpation of the lumbar and cervical revealed tenderness to be present."
 {¶ 15} 7. Following a June 2, 2003 hearing, a district hearing officer ("DHO") issued an order granting TTD compensation beginning February 26, 2003, based upon Dr. Yakhmi's February 27, 2003 C-84.
 {¶ 16} 8. Relator administratively appealed the June 2, 2003 DHO's order.
 {¶ 17} 9. The administrative appeal was heard by a staff hearing officer ("SHO") on July 14, 2003. At the hearing, claimant submitted a C-84 from Dr. Yakhmi dated March 18, 2003. On this C-84, Dr. Yakhmi also certified temporary total disability from February 26, 2003 to an estimated return-to-work date of March 26, 2003. On this C-84, Dr. Yakhmi indicated that the allowed conditions prevent a return to work.
 {¶ 18} 10. Relator filed a notice of appeal from the SHO's order of July 14, 2003. On August 27, 2003, another SHO mailed an order refusing the appeal.
 {¶ 19} 11. Relator moved for reconsideration of the SHO's refusal order of August 27, 2003. On October 4, 2003, the commission mailed an order denying relator's request for reconsideration.
 {¶ 20} 12. The record contains Dr. Yakhmi's handwritten office notes of February 20, 2003 and February 26, 2003. Because relator has made the office notes the key to its claim in this action, the magistrate has undertaken much effort to read those notes. Notwithstanding this effort, seemingly significant portions of the notes remain illegible or undecipherable to this magistrate.
 {¶ 21} 13. With respect to Dr. Yakhmi's February 20, 2003 office note, the magistrate agrees with relator's assertion here that Dr. Yakhmi wrote "muscle spasm." However, the word immediately following is undecipherable.
 {¶ 22} 14. With respect to Dr. Yakhmi's February 26, 2003 office note, the magistrate is able to decipher as follows:
Still having unbearable pain with inability to work.
[Possibly three illegible words or symbols.]
Full [could be "rom" (range of motion)]
Extreme tenderness on palpation.
 {¶ 23} 15. On December 5, 2003, relator, Extendicare Health Services, Inc., filed this mandamus action.
Conclusions of Law:
 {¶ 24} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 25} Relator's challenge to the commission's award of TTD compensation beginning February 26, 2003 is, in large part, premised upon the decision of the Supreme Court of Ohio in Stateex rel. Ohio Treatment Alliance v. Paasewe, 99 Ohio St.3d 18,2003-Ohio-2449. Accordingly, analysis begins here with review of that decision.
 {¶ 26} In Ohio Treatment Alliance, the court issued a writ of mandamus ordering the commission to vacate its TTD award which was based upon reports from Dr. Sampson. Following his being fired on July 16, 2000, claimant, Eric Paasewe, obtained a C-84 from Dr. Sampson that certified temporary total disability from May 11, 2000 through October 11, 2000, despite the doctor's prior release of the claimant to work and the claimant's actual return to work. The court found that Dr. Sampson's C-84s in effect repudiate his earlier release to work without explanation and, in fact, ignore claimant's actual return.
 {¶ 27} In Ohio Treatment Alliance, the Supreme Court of Ohio states:
Cognizant of the medical implications involved, we have carefully scrutinized — and will continue to carefully scrutinize — claims for TTC that are close in time to a claimant's termination, particularly where the claimant either had been released or had actually returned to the former position of employment. See State ex rel. McClain v. Indus. Comm. (2000),89 Ohio St.3d 407, 732 N.E.2d 383. A determination of temporary total disability inherently declares that a claimant is medically unable to return to his or her former job. Where a claimant works that job on Wednesday morning, is fired on Wednesday afternoon, and alleges on Thursday morning that he or she is now temporarily and totally disabled, a single question emerges: what happened in 12 hours to transform a nondisabling condition into a disabling one? It is a situation that is — and will remain — inherently suspicious. As we observed in upholding denial of TTC inMcClain:
"[C]laimant reported for his regular shift on September 4, 1997, and did not complain of any work-prohibitive problems at that time. It was only after claimant tested positive for alcohol consumption that his condition suddenly became work-prohibitive." Id. at 409, 732 N.E.2d 383.
Medical evidence will, therefore, be pivotal in determining eligibility for TTC when a claimant is fired near the time of a claimed disability. If documentation can, for example, indeed establish coincidental injury-related circumstances or demonstrate that the claimant's return to work was not without continuing medical problems, then the claimant may be able to sustain his or her burden of proof. Many claimants, however, will have difficulty establishing that a sudden onset of "disability" that coincides with termination of employment is truly related to the industrial injury.
Id. at 19-20, ¶ 7-9.
 {¶ 28} According to relator, "Ohio Treatment Alliance
stands for the proposition that medical records must support awards of compensation and that a higher level of scrutiny is appropriate when discipline is involved." (Relator's brief at 9.)
 {¶ 29} Contrary to what relator seems to suggest, the decision in Ohio Treatment Alliance does not alter the fundamental rule in mandamus that it is the commission that weighs the evidence and that the courts will not reweigh the evidence for the commission absent an abuse of discretion.
 {¶ 30} Relator's challenge to the commission's TTD award is premised upon its comparison of Dr. Yakhmi's February 20, 2003 and February 26, 2003 office notes. According to relator, Dr. Yakhmi rendered inconsistent medical opinions when he opined that claimant could return to work on February 21, 2003 without restrictions, then opined that claimant could not return to work following the February 26, 2003 office visit. According to relator, the February 26, 2003 office notes document medical improvement over the February 20, 2003 office visit.
 {¶ 31} Relator's claim that Dr. Yakhmi documented medical improvement on February 26, 2003, is premised upon relator's limited reading of the office notes. According to relator, on February 26, 2003, Dr. Yakhmi noted full range of motion and made no mention of the previous spasms.
 {¶ 32} In the magistrate's view, relator's claim here that Dr. Yakhmi's February 26, 2003 office notes document medical improvement of claimant's industrial injury is an invitation that this court second-guess the commission's evaluation of all the medical evidence before it. This court should decline relator's invitation.
 {¶ 33} While the office notes of Dr. Yakhmi are typically sketchy, his C-84s are clear. After all, it is the C-84 form that the commission has developed so that treating physicians can report their clinical findings.
 {¶ 34} Moreover, contrary to what relator seems to suggest here, there is no requirement that a physician's office note relating to a visit or examination replicate word for word the findings contained in a C-84 that is often completed at or near the time of the visit. Accordingly, it should be noted that, on the C-84s dated February 27, 2003 and March 18, 2003, Dr. Yakhmi does document "muscle spasms" even though the words "muscle spasms" do not appear on the February 26, 2003 office note. That Dr. Yakhmi failed to note "muscle spasms" on the February 26, 2003 chart, but noted "muscle spasms" on the C-84 completed the next day, does not automatically flaw the C-84.
 {¶ 35} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
 /s/ Kenneth W. Macke
KENNETH W. MacKE MAGISTRATE