[Cite as *State ex rel. Prater v. Indus. Comm.*, 2021-Ohio-1890.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Lori R. Prater, | : | |
| Relator, | : | |
| v. | : | No. 19AP-555 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on June 3, 2021

*Philip J. Fulton Law Office,* and *Michael P. Dusseau,* for relator.

*Dave Yost,* Attorney General, and *Anna Isupova,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

MENTEL, J.

{¶ 1} Relator, Lori R. Prater, brought this original action seeking a writ of mandamus ordering respondent, the Industrial Commission of Ohio, to vacate its order denying her request for permanent total disability compensation and to award her the compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate. On November 25, 2020, the magistrate issued a decision, including findings of fact and conclusions of law, appended hereto. The magistrate recommends that we deny the request for a writ of mandamus. (*See* App'x. at 13.) The magistrate also provided notice to the relator of the opportunity under Civ.R. 53(D)(3) to object to the findings of fact and conclusions of law in the decision. *Id.*

{¶ 3} Relator filed no objection to the magistrate's decision. "If no timely objections are filed, the court may adopt a magistrate's decision, unless it determines that there is an error of law or other defect evident on the face of the magistrate's decision." Civ.R. 53(D)(4)(c). Our review of the magistrate's decision reveals no error of law or other evident defect. *See, e.g.*, *State ex rel. Alleyne v. Indus. Comm.*, 10th Dist. No. 03AP-811, 2004-Ohio-4223 (adopting the magistrate's decision where no objections were filed). Accordingly, we adopt the decision of the magistrate and deny the writ.

*Writ of mandamus denied.*

DORRIAN, P.J. and BROGAN, J., concur.

BROGAN, J., retired, of the Second Appellate District, assigned to active duty under authority of the Ohio Constitution, Article IV, Section 6(C).

_____

# A P P E N D I X

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Lori R. Prater,                        :

      Relator,                                          :

v.                                                   :                    No. 19AP-555

Industrial Commission of Ohio et al.,               :                 (REGULAR CALENDAR)

      Respondents.                                      :

---

## M A G I S T R A T E ' S   D E C I S I O N

Rendered on November 25, 2020

---

*Philip J. Fulton Law Office,* and *Chelsea Fulton Rubin,* for relator.

*Dave Yost,* Attorney General, and *Anna Isupova,* for respondent Industrial Commission of Ohio.

---

IN MANDAMUS

{¶ 4}   Relator, Lori R. Prater ("claimant"), has filed this original action requesting this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission") to vacate its order that denied relator's request for permanent total disability ("PTD") compensation, and to enter an order awarding the compensation.

Findings of Fact:

{¶ 5}   1. On October 28, 1997, claimant sustained an industrial injury while lifting a bag of dirt as part of her employment as a lab tech for respondent, CV Materials Ltd. ("employer"), and her workers' compensation claim was allowed for the following conditions: sprain lumbar region; L3-L4, herniated disc; post laminectomy syndrome-

lumbar; post-surgical infection at site of spinal cord stimulator; recurrent depressive psychosis—moderate; and psychogenic pain.

{¶ 6} 2. Claimant underwent nine surgeries due to the allowed conditions in her claim. She last worked on October 7, 1998.

{¶ 7} 3. The commission denied two prior applications for PTD on July 13, 2007, and February 13, 2016. In the February 13, 2016 decision, a staff hearing officer ("SHO") for the commission concluded that claimant was both physically and psychologically capable of performing sedentary work, based upon the November 23, 2015, report of Paul T. Hogya, M.D., and the December 7, 2015 report of James Hawkins, M.D.

{¶ 8} 4. In his November 23, 2015 report, Dr. Hogya found: (1) claimant is not at maximum medical improvement ("MMI") for the physical allowed conditions; (2) claimant has a whole person impairment of 25 percent; and (3) claimant is capable of functioning at a sedentary level.

{¶ 9} 5. In his December 7, 2015 report, Dr. Hawkins found, pursuant to a psychiatric examination, the following: (1) with regard to activities of daily living, claimant had mild 10 percent psychiatric impairment; (2) socially, claimant had mild 15 percent psychiatric impairment; (3) with regard to concentration, pace, and persistence, claimant had moderate 30 percent psychiatric impairment; (4) with regard to adaptation, claimant had mild 10 percent impairment; (5) claimant had a whole person impairment of 16 percent; (6) claimant was at MMI; and (7) claimant was capable of entry-level work, with breaks, limited contact with the public, simple decision making, and simple one- and two-step instructions.

{¶ 10} 6. On March 2, 2017, claimant was examined by Richard M. Ward, M.D., and in a report of the same date, Dr. Ward found the following: (1) claimant is not capable of returning to sustained remunerative employment; (2) there is no combination of sit, stand, or walk option that would add up to a normal eight-hour work day for her; (3) she has severe postural limitation, limitations on her ability to lift and carry, and she cannot use her legs to operate foot controls; (4) claimant's impairment is permanent; and (5) claimant should be awarded PTD compensation.

{¶ 11} 7. On April 11, 2017, claimant filed the present application for PTD.

{¶ 12} 8. On June 5, 2017, claimant was examined, at the request of the commission by E. Gregory Fisher, M.D., regarding the allowed physical conditions. In a June 12, 2017 report, Dr. Fisher found the following: (1) claimant was at MMI for all allowed conditions; (2) claimant had a 23 percent combined whole body impairment for all allowed conditions involving her back; and (3) based upon claimant's physical strength rating, claimant could perform sedentary work, in that she could drive a car for 45 minutes at a time, sit for at least 40 minutes at a time, and carry a gallon of milk.

{¶ 13} 9. On June 9, 2017, claimant was examined, at the request of the commission, by Giovanni Bonds, Ph.D., regarding the allowed psychological conditions. In his June 12, 2017 report based upon the examination, Dr. Bonds found the following: (1) claimant is mildly impaired in her activities of daily living, rated Class 2, 10 percent; (2) she is mildly impaired in social functioning, rated Class 2, 15 percent; she is often depressed, easily irritated, and quickly becomes angry; she does not want to do any activities or be around people due to pain and depression; (3) she is rated Class 3, 35 percent, in terms of concentration, persistence, and pace; claimant was attentive, focused, and on task, had average cognitive abilities; her short term memory was intact on screening questions; preoccupation with pain and low energy level contributed to some impairment in her concentration and persistence; (4) she is rated Class 3, 35 percent, in terms of adaptation; she is constantly depressed and easily frustrated, stress amplifies her pain and exacerbates her depression, and she would have difficulty handling pressures of keeping a work schedule, performing consistently, and meeting productivity; (5) claimant is still at MMI for the allowed conditions, recurrent depressive psychosis-moderate and psychogenic pain; (6) claimant has had appropriate treatment and interventions and has reached a point of stabilization; (7) no additional functional improvements or reduction of symptoms seem likely; (8) because of her physical condition, the pain problem is unlikely to improve and will continue to be a factor in her being depressed; and (9) the percentage of whole person impairment due to the allowed conditions, recurrent depressive psychosis-moderate and psychogenic pain, is 24 percent. On an occupational activity assessment, Dr. Bonds found claimant was incapable of work due to the limitations in ability to stay on task, perform work consistently, handle stress, and start and complete tasks consistently and timely. Dr.

Bonds also found that work stress would exacerbate her depression and pain, which would decrease her work performance.

{¶ 14} 10. On June 30, 2017, the commission issued a tentative order ("tentative order") granting PTD compensation. In the tentative order, the SHO found the following: (1) PTD is awarded based upon the June 12, 2017 commission specialist medical report by Dr. Bonds; (2) Dr. Ward opined the allowed physical conditions were permanent, having reaching MMI, and resulted in claimant's inability to return to any form of gainful employment; (3) Dr. Ward found that claimant has severe postural limitations, has limitations on her ability to lift and carry, and cannot use her legs to operate foot controls; (4) Dr. Ward found there was no combination of sit, stand, or walk option that would add up to the normal eight-hour work day for claimant; and (5) claimant's allowed physical and psychological conditions are permanent, having reached MMI, and have resulted in claimant's inability to return to any form of sustained remunerative employment.

{¶ 15} 11. On July 11, 2017, the Administrator for the Ohio Bureau of Workers' Compensation ("BWC") objected to the tentative order.

{¶ 16} 12. On August 24, 2017, the SHO issued an interlocutory order ("interlocutory order"), in which she vacated the tentative order "because there is a medical report and a legal dispute over the issue of permanent total disability."

{¶ 17} 13. On December 6, 2017, the SHO denied claimant's PTD application. With regard to the medical evidence, the SHO relied upon the reports of Drs. Fisher, Hogya, and Hawkins, concluding that claimant was capable of performing sedentary work at an entry level, with breaks, with limited contact with the public, with simple decision making, and with simple one- and two-step instructions. With regard to the vocational disability factors, the SHO found the following: (1) claimant is 53 years old; (2) claimant last worked on October 7, 1998; (3) claimant is able to drive; (4) claimant is able to read, write, and perform basic math; (5) claimant earned a high school diploma in 1983; (6) claimant completed private security training at Dret School and attended Clark State University for approximately one year, studying social work; (7) claimant worked as a security officer at Wittenburg University, a food service line employee in college, a laundry worker at a nursing home, a toy warehouse stocker/cleaner, a loom operator in a factory, and for the named employer from 1995 through 1998 as a laboratory technician; (8) claimant is able to

express herself clearly and in a thoughtful manner; (9) claimant was able to thoughtfully and clearly articulate her employment history and educational background; (10) claimant's age of 53 years was not a barrier to re-employment, vocational training, or re-education efforts; (11) claimant is approximately 12 years away from the regular age of retirement, giving her ample opportunity to undertake additional training or education, which would effectuate a return to employment within her restrictions; (12) since the commission's February 13, 2016 decision finding claimant was capable of performing sedentary work, claimant took no action to return to work, and her mere increase in age may not be the sole causative factor to support PTD benefits; (13) claimant's decision to not seek work after the commission's February 13, 2016 decision was a personal choice; (14) claimant's educational background is an asset, and she is intellectually capable of returning to sedentary work or to additional educational training that would effectuate a return to sedentary work; and (15) claimant's past training in private and campus security is a vocational asset that transfers well to work within the physical and psychological restrictions stated by Drs. Hogya, Fisher, and Hawkins, and shows that claimant can work with breaks, work with limited public contact, and perform simple decision making. Therefore, the SHO concluded, because claimant has the residual functional capacity to perform sedentary work activity when only the impairment from the allowed conditions in the claim is considered, and claimant is qualified by age, education, and work history to obtain and perform work at that level, claimant is capable of sustained remunerative employment and is not permanently and totally disabled.

{¶ 18} 14. On December 15, 2017, claimant filed a request for reconsideration of the December 6, 2017 order.

{¶ 19} 15. On January 2, 2018, the commission denied claimant's request for reconsideration.

{¶ 20} 16. On August 21, 2019, claimant filed a complaint for writ of mandamus, requesting that this court vacate the commission's order that denied her motion for PTD compensation, and to enter an order awarding the compensation.

{¶ 21} 17. A magistrate of this court was appointed in this case, and on August 10, 2020, the current magistrate was appointed and substituted as magistrate.

Conclusions of Law and Discussion:

{¶ 22} The magistrate recommends that this court deny relator's request for a writ of mandamus.

{¶ 23} In order for this court to issue a writ of mandamus, a relator must ordinarily show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 24} " 'Permanent total disability' means the inability to perform sustained remunerative employment due to the allowed conditions in the claim." Ohio Adm.Code 4121-3-34(B)(1). A court must uphold a factual determination by the commission as long as it is supported by some evidence in the record, regardless of whether evidence supporting a contrary conclusion also exists, even if the contrary evidence is greater in quality or quantity. *State ex rel. Vonderheide v. Multi-Color Corp.*, 156 Ohio St.3d 403, 2019-Ohio-1270, ¶ 14. Evaluation of the weight and credibility of the evidence is the exclusive province of the commission, which "has substantial leeway in both interpreting and drawing inferences from the evidence before it." *State ex rel. Lawson v. Mondie Forge*, 104 Ohio St.3d 39, 2004-Ohio-6086, ¶ 34.

{¶ 25} Here, claimant first argues the commission abused its discretion in its August 24, 2017 interlocutory order when it ignored its Memo G3 | Guidelines for Permanent Total Disability Tentative Grant Orders, which provides:

> Permanent total disability tentative grant orders shall be issued when:
>
> A. The Industrial Commission specialist states that based upon the allowed conditions the injured worker is unable to perform any sustained remunerative employment;
>
> B. The injured worker's medical evidence states that based upon the allowed conditions the injured worker is unable to perform any sustained remunerative employment;
>
> C. If it exists, the employer's medical evidence states that the injured worker is unable to perform any sustained remunerative employment based upon the allowed conditions; and
>
> D. If it exists and addresses the issue of permanent total impairment, the Bureau of Workers' Compensation's medical

evidence states that the injured worker is unable to perform any sustained remunerative employment based upon the allowed conditions.

Remember, the permanent total disability tentative order process for grants is for those claims where the granting of the application is obvious.

Objections:

A party may file an objection to the tentative order within 14 days of receipt of the tentative order. If a party files an objection, a hearing will be scheduled before a Staff Hearing Officer on the issue of the appropriateness of the tentative order. If the SHO finds that the granting of permanent total disability was inappropriate due to a colorable legal issue that would preclude the granting of permanent total disability, the tentative order shall be vacated and the IC-2 Application returned for continued processing in accordance with the rules. If the SHO finds that the tentative order was inappropriate because relevant medical evidence was not considered by the IC, the tentative order shall be vacated and the IC-2 application shall be referred to the Hearing Administrator for continued processing in accordance with the rules. Otherwise, the tentative order shall be affirmed.

{¶ 26} Here, in the interlocutory order, the SHO vacated the tentative order because there was a medical report and legal dispute over the issue of PTD. Claimant contends there was no legal justification for this finding because Dr. Bonds found that she was unable to perform any sustained remunerative employment, and the analysis should have ended upon making that finding pursuant to Memo G3. Claimant also asserts the interlocutory order failed to explain what disputed medical evidence existed, in violation of *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203, 206 (1991).

{¶ 27} The commission committed no error in granting the interlocutory order. Ohio Adm.Code 4121-3-34(C)(6) provides:

(a) After the reports of the commission medical examinations have been received, the hearing administrator may refer the claim to an adjudicator to consider the issuance of a tentative order, without a hearing.

(i) Within fourteen days of the receipt of the tentative order adjudicating the merits of an application for compensation for

permanent total disability, a party may file a written objection to the order. Unless the party notifies the commission in writing of the objection to the tentative order within fourteen days after the date of receipt of the tentative order, the tentative order shall become final with regard to the award of permanent total disability compensation. A party may file a written request to change the start date or allocation of permanent total disability compensation within thirty days of the receipt of the tentative order adjudicating the merits of an application for compensation for permanent total disability.

(ii) In the event a party makes written notification to the industrial commission of an objection within fourteen days of the date of the receipt of the notice of findings of the tentative order, the application for compensation for permanent total disability shall be set for hearing and adjudicated on its merits.

{¶ 28} Here, the SHO granted a tentative order awarding PTD, pursuant to the procedure in Ohio Adm.Code 4121-3-34(C)(6). The Administrator for the BWC objected to the tentative order pursuant to Ohio Adm.Code 4121-3-34(C)(6)(a)(ii). The SHO then issued an interlocutory order, in which it vacated the tentative order and set the matter for a hearing on the merits. The SHO's interlocutory order complied with the procedure set forth in the Ohio Administrative Code and Memo G3. Memo G3 indicates that if a party files an objection, a hearing will be held before an SHO, who shall determine the appropriateness of the order based upon any colorable legal issues or any relevant medical evidence that was not considered. The SHO did so here. Ohio Adm.Code 4121-3-34(C)(6)(a)(ii) indicates that if a party makes a written notification to the commission of an objection to the tentative order, the PTD application must be set for a hearing on the merits, which is precisely what the SHO here did in the interlocutory order.

{¶ 29} Furthermore, claimant's claim that the interlocutory order was deficient pursuant to *Noll* is unpersuasive. *Noll* requires that, "[i]n any order of the Industrial Commission granting or denying benefits to a claimant," the commission must specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision. *Noll* at syllabus. Claimant presents no authority for the proposition that an interlocutory order that vacates a tentative order granting PTD must follow the directives in *Noll*. An interlocutory order that vacates a tentative order does not grant or deny benefits. *See, e.g.*, *State ex rel. Darden v. Indus. Comm.*, 10th Dist. No. 05AP-97, 2005-Ohio-6812, ¶ 23 (the

decision to deny a third-level appeal is not an order granting or denying benefits to a claimant and, as such, the mandate of *Noll* does not apply); *State ex rel. Extendicare Health Servs., Inc. v. Indus. Comm.*, 10th Dist. No. 03AP-1201, 2004-Ohio-5255, ¶ 4-5 (when the commission refuses to hear a further appeal from a decision of an SHO granting benefits to a claimant, the refusal is not subject to *Noll*, as a refusal of further appeal is not an "order" and does not grant or deny benefits to a claimant). Instead, after the commission vacates a tentative order via an interlocutory order, Memo G3 and Ohio Adm.Code 4121-3-34(C)(6)(a)(ii) provide that the matter is returned or referred to the hearing administrator for continued processing until a final determination of benefits is made after a hearing on the merits. A tentative order becomes a final determination of benefits only if no objection is filed. Ohio Adm.Code 4121-3-34(C)(6)(a)(i). Therefore, this argument is without merit.

{¶ 30} Claimant next argues the December 6, 2017 SHO order failed to consider the commission specialist reports of Drs. Bonds and Ward. Claimant contends the SHO did not explain why he ignored Dr. Bonds' report, which was the sole psychological report the tentative order relied upon to grant PTD and issued more recently than the psychological report of Dr. Hawkins. Claimant asserts that the commission is required to state why it rejected the evidence relied upon in a tentative order. Initially, claimant fails to cite any evidence demonstrating the commission failed to consider the reports of Drs. Bonds and Ward. The commission is only required to cite the evidence upon which it relies to reach its decision. *State ex rel. Mitchell v. Robbins & Myers, Inc.*, 6 Ohio St.3d 481 (1983). It is not required to enumerate all evidence considered. *State ex rel. DeMint v. Indus. Comm.*, 49 Ohio St.3d 19, 20 (1990). Furthermore, claimant fails to cite any case law specific to tentative orders that stands for the proposition the commission is required to state why it later rejected the evidence relied upon in a tentative order. It is well established the commission is not required to cite evidence that has been rejected or explain why that evidence was deemed unpersuasive. *State ex rel. Scouler v. Indus. Comm.*, 119 Ohio St.3d 276, 2008-Ohio-3915, ¶ 16, citing *DeMint* at 20. The case cited by claimant, *State ex rel. Mackey v. Dept. of Edn.*, 10th Dist. No. 09AP-966, 2010-Ohio-3522, has no application to claimant's argument and does not alter the principle set forth in *DeMint. See Mackey* (finding the commission must discuss or decide an issue when the parties discussed and presented evidence regarding that issue). Therefore, these arguments are without merit.

{¶ 31} Claimant next argues the commission cannot modify a prior order based upon a mere possibility of unspecified error. In support, claimant cites case law pertaining to the invocation of continuing jurisdiction, which holds that the mere possibility of unspecified error cannot sustain the invocation of continuing jurisdiction. Claimant contends that a tentative order is analogous to exercising continuing jurisdiction, and there were no new and changed circumstances, fraud, clear mistake of law, or error by an inferior tribunal to justify any "inappropriateness" of the tentative order.

{¶ 32} However, there is no merit to claimant's contention that the vacating of a tentative order is analogous to the exercise of continuing jurisdiction. Pursuant to Ohio Adm.Code 4121-3-34(C)(6)(a)(i), a tentative order granting PTD does not become final if an objection is filed within 14 days. Because an objection was filed here, the SHO's tentative order was not final, and the prerequisites for exercising continuing jurisdiction need not be met. *See State ex rel. Thirion v. Indus. Comm.*, 10th Dist. No. 10AP-282, 2011-Ohio-6463 (finding that, pursuant to Ohio Adm.Code 4121-3-34(C)(6), the tentative order became final upon the failure to object to the tentative order; once the tentative order became final, it could be reopened only through the commission's exercise of continuing jurisdiction). *See also State ex rel. Wells v. Indus. Comm.*, 10th Dist. No. 04AP-758, 2006-Ohio-2738, ¶ 15 (finding that, under the language in R.C. 4123.52, the commission's continuing jurisdiction applies to final orders). Therefore, claimant's argument is without merit.

{¶ 33} Finally, claimant argues the commission violated her due process rights because the interlocutory order did not lawfully explain why it was vacating the tentative order. Claimant claims it is impossible to prepare for a hearing when the basis of the objection was unknown and the reason for overturning the order had no basis in law.

{¶ 34} Claimant is correct the due process rights conferred by the United States and Ohio Constitutions must be recognized and upheld during administrative proceedings such as those before the commission. *State ex rel. Finley v. Dusty Drilling Co., Inc.*, 2 Ohio App.3d 323 (10th Dist.1981). As applied to proceedings before the commission, "[p]rocedural due process includes the right to a reasonable notice of hearing as well as a reasonable opportunity to be heard." *Id.* at 324-25. "Furthermore, the right to a reasonable opportunity to be heard includes reasonable notice of the time, date, location and *subject matter* of the hearing." (Emphasis sic.) *State ex rel. LTV Steel Co. v. Indus. Comm.*, 102

Ohio App.3d 100, 103-04 (10th Dist.1995). Thus, due process demands a claimant have sufficient notice that an issue has been raised and an opportunity to present evidence on that issue. *State ex rel. Navistar, Inc. v. Indus. Comm.*, 10th Dist. No. 16AP-776, 2017-Ohio-8976, ¶ 18, citing *State ex rel. Jenkins v. Indus. Comm.*, 10th Dist. No. 16AP-534, 2017-Ohio-7896, ¶ 5. "Without reasonable notice of the hearing's subject matter, a party's right to appear and present well-supported and developed arguments endorsing his position is compromised." *State ex rel. Thompson v. Indus. Comm.*, 10th Dist. No. 08AP-374, 2009-Ohio-1543, ¶ 50.

{¶ 35} In the present matter, claimant was provided with notice of the hearing's subject matter sufficient to comport with due process. Claimant was clearly aware that PTD was at issue and the competing medical evidence concerning whether claimant was capable of sustained remunerative employment was at the center of the dispute. Although the SHO did not cite in the interlocutory order what specific medical evidence was in dispute, as found above, there is no authority suggesting that an interlocutory order vacating a tentative order include such specificity. This is not a situation in which a completely new issue was determined by the commission without notice to a party. Therefore, the interlocutory order was sufficient to comport with due process.

{¶ 36} Accordingly, it is the magistrate's decision that this court should deny claimant's petition for writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

### NOTICE TO THE PARTIES

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).